# Perry, Appellant, _v._ Payne.

*Negligence—Master and servant—Owner and contractor—Elevator.*

Where an owner of a building permits two workmen employed by a contractor to use the top of the elevator as a staging for painting the upper part of the shaft of the elevator, and after this part of the work is done, the painters go to the bottom of the shaft, and while there at work the elevator boy employed by the owner, drives the elevator down the shaft, and one of the men is killed, the owner of the building is liable in damages for the death.

*Bond—Indemnity against damages—Contract—Contractor—Owner—Nonsuit.*

A contract of indemnity against damages arising from accidents to persons should not be construed to indemnify against the negligence of the indemnitee, unless it is so expressed in unequivocal terms.   The liability on such indemnity is so hazardous and the character of the indemnity so unusual and extraordinary, that there can be no presumption that the indemnitor intended to assume the responsibility unless the contract puts it beyond doubt by express stipulation.   No inference from words of general import can establish it.

The contractors in a building contract gave to the owner of the building a bond conditioned that they "shall protect and keep harmless the owner of and from all loss, costs and damages, for nonfulfillment of same, or by reason of any liens, claims or demands for material for labor furnished for the construction of said work, or from damages arising from accidents to persons employed in the construction of, or passing near the said work, or for damages done to adjacent properties by reason of the construction of said work, or by depositing material in such a manner as to damage either the city or the individual." *Held*, that the bond did not apply to accidents to persons resulting from the negligence of the owner or his servants while the owner was in possession of the building.

Argued Feb. 4, 1907.    Appeal, No. 192, Jan. T., 1906, by plaintiff, from order of C. P. No. 1, Phila. Co., March T., 1905, No. 576, refusing to take off nonsuit in case of Edward Perry v. George F. Payne and Charles G. Wetter, trading as George F. Payne & Company.    Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and STEWART, JJ.    Affirmed.

Assumpsit on a bond.    Before BEITLER, J.

The facts are stated in the opinion of the Supreme Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*Thomas Leaming*, for appellant.—The painter's presence on a stepladder in the elevator shaft was in pursuance of defendant's contract.

The elevator was being operated in pursuance of an arrangement between employees of both parties for the execution of defendant's contract.

The liability is covered by the contract and bond of indemnity : Booth v. Dorsey, 208 Pa. 276 ; Woodbury v. Post, 158 Mass. 140 (33 N. E. Repr. 86).

*Edward W. Magill*, with him *Ruby R. Vale*, for appellees. —Neither the building contract between the appellant and appellees, nor the condition of the bond given in accordance therewith, either by express language or by implication, contemplates the indemnification of the appellant against the con-

sequences of his sole and exclusive negligence or that of his employees: Mynard v. Syracuse, etc., R. R. Co., 71 N. Y. 180; Mitchell v. Southern Ry. Co., 24 Ky. L. Repr. 2388 (74 S. W. Repr. 216); Atwood v. Reliance Transportation Co., 9 Watts, 87; Manhattan Ry. Co. v. Cornell, 54 Hun, 292 (7 N. Y. Supp. 557); Indianapolis, etc., R. R. v. Brownenburg, 32 Indiana, 199; Flynn v. Philadelphia, 199 Pa. 476; Swing v. Munson, 191 Pa. 582.

The parties did not intend that the indemnitor should be liable where a third party recovers a judgment against the indemnitee as a result of the concurrent negligence of the indemnitor and the indemnitee : Springfield v. Boyle, 164 Mass. 591 (42 N. E. Repr. 333).

OPINION BY MR. JUSTICE MESTREZAT, March 11, 1907 :

By a contract in writing dated October 21, 1902, George F. Payne & Co., the defendants, agreed to erect for Edward Perry, the plaintiff and owner of the premises, a building at the southeast corner of Sixteenth and Chestnut streets; and if the site was delivered to them by a certain date they agreed to deliver the finished building to the plaintiff on December 15, 1903. By the terms of the contract Payne & Company promised to execute and deliver to Perry a bond in the sum of $140,000, indemnifying him, inter alia, "from all loss, cost or expense .... arising from accidents to mechanics or laborers employed in the construction of said work, or to persons passing where the work is being constructed:" and in pursuance thereof the defendants gave their bond to Perry conditioned, inter alia, that they "shall protect and keep harmless the said Edward Perry of and from all loss, costs and damages, for non-fulfillment of same, or by reason of any liens, claims or demands for material for labor furnished for the construction of said work, or from damages arising from accidents to persons employed in the construction of, or passing near the said work, or for damages done to adjacent properties by reason of the construction of said work, or by depositing material in such a manner as to damage either the city or the individual."

Payne & Company entered upon their work, but failed to complete it within the specified time. The time limit was waived by mutual consent, and as certain parts of the building

were completed and ready for occupancy they were delivered to Perry. In March, 1904, the entire building had not been finished, but Perry was in partial possession and had placed his employees in charge of the engine, machinery, elevators and every part of the building. A few of the employees of the contractors or of the subcontractors continued to work on the building until about June 1, 1904, when all their workmen were withdrawn from the building and although not formally delivered to him, Perry took possession of it. Owing to some defect in the plastering on the side of one of the elevator shafts, a piece of the plastering, about fifteen inches wide and twenty feet in height, had to be removed. The side of the shaft was then replastered and painted, but owing to further defects the architects refused to approve it, and it had to be removed and replastered again. This was done, and it necessitated the repainting of the shaft from the third floor to the bottom. Payne & Company were required under the contract to do the work. On June 17, 1904, on request of Payne & Company, Perry consented that their employees might use the elevator as a movable stage in painting the side of the shaft. Perry was then and had been for some months in the exclusive possession of the elevator, and his employees were running it. On the morning of June 18, 1904, two painters in the employ of a subcontractor of Payne & Company got on top of the elevator at the third floor for the purpose of painting the side of the shaft. As the painting within reach of the painters was completed, the boy operating the elevator would lower it, and as the work progressed, he continued to lower it until the bottom of the shaft was reached. There were then still about eight or ten feet of the shaft, the space occupied by the elevator, to be painted. The painters left the top of the elevator, and after the boy had hoisted it, they entered the shaft to complete the painting. Lynch, one of the painters, ascended a stepladder and while standing on it and engaged in painting, the boy lowered the elevator which struck Lynch and caused his death. His widow recovered a judgment against Perry for the negligence of the latter's employee in operating the elevator.

This is an action of assumpsit brought by Perry against Payne & Company on the bond of indemnity. The learned trial judge in the court below held that under the facts of the

case Payne & Company were not liable to Perry on the bond for the damages recovered against him by Lynch's widow, and entered a nonsuit. The plaintiff has taken this appeal.

The learned counsel for the plaintiff concedes that at the time of the accident the elevator was being operated by a servant of the plaintiff for whose negligent act, resulting in the death of Lynch, the plaintiff was responsible. This admission was fully justified by the evidence, as well as by the judgment obtained against Perry. He claims, however, that the court below made an unwarranted distinction in holding that the servant, operating the elevator, might have been regarded as being in the employment of the defendants while the painters were on the top of the elevator and using it as a staging for painting, but that after they left the top of the elevator and began painting under it at the bottom of the shaft, the servant was then in the employ of the plaintiff and the elevator was under the management and control of the plaintiff. We do not think the counsel's position is well taken. From the facts, which are stated above, it is clear that whatever doubt may exist as to who was the employer of the boy—Perry or Payne & Company—while the painters were using the top of the elevator as a staging, or who, during that time, was in control of the elevator, there can be no question that after the painters had left the elevator and resumed their work at the bottom of the shaft, the boy was Perry's servant and as such was in control of and operating the elevator. As we have seen, at the time Perry gave permission to Payne & Company to use the elevator, he was in the exclusive control and management of it, and he consented to its use by them for staging purposes only, and when it was no longer needed for that purpose, Perry, through his servant, resumed the use of it for his own purpose. The painters did not need it while painting at the bottom of the shaft, and it had to be hoisted above the unpainted portion of the side of the shaft before they could do that part of the work. Having served the purpose for which the contractors had procured it from Perry, the owner of the building then continued to use the elevator in his own business when, by a negligent act of his servant in operating it, it caused the injury resulting in Lynch's death.

The principal and controlling question in the case depends

upon the interpretation of the bond on which the action was brought. That part of the condition of the bond with which we are particularly concerned provides that the contractors "shall protect and keep harmless the said Edward Perry . . . . from damages arising from accidents to persons employed in the construction of, or passing near, the said work." The plaintiff contends that this bond indemnifies him against all damages arising from injuries to any person employed about the work, whether the injuries were caused by the negligence of the contractors or their employees, or by the negligence of himself or his employees. He contends that the language can bear no other interpretation, that the liability against which he is indemnified does not depend upon who caused the injury, but must be determined by the class of persons to which the victim belongs, and that the indemnification covers all damages which he is required to pay arising from injuries to any person who is engaged in the construction of the building.

We cannot assent to this construction of the bond. It ignores the well-established rules applicable to the construction of such instruments, and results, as we think, in imposing a liability on the contractors which was not contemplated by the parties. In construing the instrument, it is our duty to ascertain the intention of the parties, and in doing so we are not confined to the language used, but may consider the circumstances surrounding the parties and their object in making the instrument. The nature of the duty of the obligor and the character of the obligee will be regarded as explanatory of the intent of the parties: Strawbridge v. Railroad Co., 14 Md. 360. Here the obligors were the contractors for the erection of the building, and by their contract they agreed "to furnish all the materials for, and to build, construct and finish complete in every respect, ready for use, a building," within a stipulated time. This necessitated their being in possession of the premises during the time required for the construction of the building, and the plaintiff desired to relieve himself from any liability or from any litigation arising out of a supposed liability for any act done during the progress or the continuance of the work by the contractors. Hence the indemnification clause of the contract and the bond. But against whose

negligent or unlawful act or acts was Perry to be indemnified?
We. think an analysis of the condition of the bond will dis-
close.  He was to be protected from loss and damages for
nonfulfillment of the contract.  Certainly that obligation rested
upon Payne & Company.  He was to be protected against
any liens, claims or demands for material for labor furnished
for the construction of the work.  That protection, manifestly,
was to be afforded by Payne & Company.  He was to be in-
demnified against damage done to adjacent properties by rea-
son of the construction of the work.  As Payne & Company
were to erect the building, we think there can be no doubt
that the damage there contemplated was such as would be
done by Payne & Company, or their employees, and not by
Perry or his employees.  He was also to be indemnified against
depositing material in such a manner as to damage either the
city or the individual.  Again recalling Payne & Company's
relation to the building, that they were to furnish the material
and erect the structure, this evidently only contemplated a
liability if the material should be deposited by the contractors,
and did not include material which might be deposited by
Perry.  In neither of the last two instances does the bond des-
ignate the party against whose negligent act Perry should be
indemnified, but no reasonable interpretation of it would im-
pose liability in either case for the acts of Perry or his em-
ployees; because manifestly the necessity for doing so could
not have been anticipated by the parties, and hence it was not
intended that the bond should cover such acts by Perry.  He
was also to be indemnified against "damages arising from ac-
cidents to persons employed in the construction of, or passing
near, the said work."   Against whose acts resulting in damages
to such persons did the parties intend that Perry should be
protected?   Manifestly against the acts of the same parties
against whom the bond protected Perry for damages arising
from the deposit of materials, or the damages done to adjacent
properties by reason of the construction of the work.  In those
cases, the negligent or unlawful acts against which Perry pro-
vided were evidently those of the contractors, although not so
expressly stipulated, and we think it equally clear that it was
the intention of both parties, when the bond in question was
given, that the accidents against which the bond indemnified

should be those that were caused by the negligence of the contractors or their employees who were engaged in the construction of the building, and not such as might arise from the unanticipated negligence of Perry or his employees.

It is contrary to experience and against reason that the contractors should agree to indemnify Perry against the negligence of himself or his employees. It would make them insurers, and impose a liability upon the contractors, the extent of which would be uncertain and indefinite, and entirely in the hands of Perry. The results of such a liability might become most disastrous. While the consideration named in the contract for the construction of the building and indemnifying the owner was large, yet it was wholly inadequate to justify the contractors in assuming liability for his negligence in view of the responsibility in constructing the building. The profits to be realized on the contract were entirely too small to warrant the contractors in agreeing to assume a liability of such great proportions and of such unlimited extent. A single act of negligence on the part of the owner or his employees, over whom the contractors would have no restraint or control whatever, might create a liability which a lifetime of successful business could not repay. An interpretation of the bond which might give rise to such results could hardly be regarded as reasonable or as giving effect to the intention of the parties.

The question presented here has not arisen or been determined in any of the reported decisions of this court. In other jurisdictions, however, the inclination is decidedly against construing a contract of this character as indemnifying the indemnitee against his own negligence; and it is there held that a contract will not be so construed unless express language requires it. In Mynard, etc., v. Syracuse, etc., R. R. Co., 71 N. Y. 180, it is held that "every presumption is against an intention to contract for immunity for not exercising ordinary diligence in the transaction of any business, and hence the general rule is that contracts will not be so construed unless expressed in unequivocal terms." In Mitchell v. Southern Ry. Co., 24 Ky. L. Repr. 2388, Mr. Justice PAYNTER, speaking for the court, says: "If a doubt existed as to its (clause of indemnity) meaning, the court would resolve that doubt against the contention

that the contract was intended to indemnify appellee against its own negligence. Every presumption is against such intention. . . . In Perkins v. New York Central R. R. Co., 24 N. Y. 196, the court said: 'A party who claims exemption from liability for the negligence of his servants or agents must undoubtedly base his claim upon the express words of his contract. It will not be presumed in his favor.'"

In Manhattan Ry. Co. v. Cornell, 54 Hun, 292, affirmed by the court of appeals of New York, 130 N. Y. 637, a contractor, employed to construct an extension to the station platform of a railway, indemnified the railway company against "all loss, cost or damage . . . . from any damages arising from injuries sustained by mechanics, laborers or other persons, by reason of accident or otherwise." During the progress of the work a laborer in the employ of the contractor was killed by an engine of the railway company for which the widow of the laborer recovered damages against the company. Suit was then brought by the company against the contractor on his indemnity contract, but it was held that the contract did not indemnify the company against the negligence of its employees. In the opinion of the court it is said: "For, while the language of this part of the contract is very general, it cannot reasonably be so construed as to impose upon the contractors the obligation to protect the plaintiff against the carelessness or negligence of persons in its own employment. What the party designed and intended by this part of the agreement was to indemnify the plaintiff against liability for any damages or injuries that might be sustained by persons in the employment of the contractors in the progress and execution of their work. . . . There was no relation whatever existing between them (employees of the railway company) and the contractors, and it is not reasonable to suppose that in the use of this language, either the plaintiff or the contractors intended or understood the latter to be obligated to indemnify the plaintiff against the carelessness or misconduct of its own servants or employees."

In Johnson v. Richmond and Danville R. R. Co., 86 Va. 975, the contract provided that a railroad company should not be responsible for any injuries to or death of any member of a firm which had contracted to construct some work for the

company, and that in the event of any suit being brought against the company or any judgment obtained against it, the contractors should resist the suit and pay such judgment.   One of the firm was killed by a train of the railroad company, and in an action for his death the company set up the contract as a defense.   The trial court sustained its position, but the court of appeals reversed, Mr. Justice LEWIS delivering the opinion saying : " It was very properly conceded in the argument that the instruction given by the circuit court is erroneous.   The theory of that instruction is that the fifth clause of the written agreement, although it in effect stipulates for exemption from liability even for the consequence of the company's own negligence, is notwithstanding valid, and consequently precludes a recovery by the plaintiff, whether the company was negligent or not.   It would be strange, indeed, if such a doctrine could be maintained.   To uphold the stipulation in question would be to hold that it was competent for one party to put the other parties to the contract at the mercy of its own misconduct, which can never be lawfully done where an enlightened system of jurisprudence prevails.   Public policy forbids it, and contracts against public policy are void."

The only case cited by the learned counsel of the plaintiff in support of his position and the one which he contends rules the present case in favor of his client is Woodbury v. Post, 158 Mass. 140.   We think, however, that the reasoning of the court there is against the plaintiff's construction of the contract in our case. There is a clear distinction between the contracts in the two cases, and the Woodbury case was ruled in favor of the indemnitee on the ground that the terms of the contract specifically provided indemnity against his own negligence.   The letters passing between the parties constituted the contract.   The indemnitee's letter contained the following proposition which was accepted by the indemnitor : " If any injury shall be occasioned to any person or property while you are using such engines or derricks, or as a result of such use, you are to indemnify us against any damage or expense by reason of the same, notwithstanding the condition of the engine, derrick, or appliances, or the negligence of our employees upon the derrick or engine, may have caused or contributed to the injury." Two of the indemnitee's employees were injured by the defec-

tive condition of one of the derricks while being used by the
indemnitor, and received compensation from the indemnitee
for their injuries. In a suit by the indemnitee to recover
this compensation from the indemnitor, it was held that the
plaintiff could recover the amount he had paid the injured
employees, although their injuries were the result of his own
negligence. The right to recover was put on the ground that
the contract expressly stipulated against the indemnitee's own
negligence, the court holding that the language used made it
clear that such liability was imposed by the contract. In the
opinion it is said (p. 144): "The clause 'notwithstanding the
condition of the engine, derrick, or appliances, or the negli-
gence of our (plaintiffs') employees upon the derrick or engine,
may have caused or contributed to the injury,' does not limit
the indemnity to damages and expenses caused by the condi-
tion of the engine, derrick, and appliances, or the negligence
of those employed upon the derrick or engine. Its purpose
and effect were to make it clear that those circumstances,
which if no such clause had been inserted, might . have been
claimed to defeat the right to indemnity, were not to impair
the plaintiffs' right. The clause negatives possible exceptions
which might in effect be read into the contract by the applica-
tion of principles of law, unless the parties made it certain that
indemnity from the result of all injuries, however occurring,
was expressly stipulated." It is, therefore, apparent from the
opinion of the court that the liability of the indemnitor was
put upon the ground that the contract expressly stipulated
against the indemnitee's own negligence, and that "the clause
negatives possible exceptions" to such liability.

We think it clear, on reason and authority, that a contract
of indemnity against personal injuries should not be construed
to indemnify against the negligence of the indemnitee, unless
it is so expressed in unequivocal terms. The liability on such
indemnity is so hazardous, and the character of the indemnity
so unusual and extraordinary, that there can be no presump-
tion that the indemnitor intended to assume the responsibility
unless the contract puts it beyond doubt by express stipulation.
No inference from words of general import can establish it.
The manifest purpose, in such cases, to indemnify against the
injury which, under the circumstances, could reasonably be

apprehended only from the action of the indemnitor or his servant, is a weighty consideration in construing indemnity contracts. The circumstances surrounding the parties, the one, the owner for whom the building is to be erected, and the other, the contractor who is to construct the building and hence from whose acts injury to persons and property may be anticipated, would seem to make the conclusion irresistible, that unless expressly stipulated in the contract the owner is not to be indemnified against his own negligence. In the case in hand the parties have not expressly stipulated against injury occasioned by the indemnitee's own negligence, and we are satisfied, from the terms of the instrument read in the light of the circumstances surrounding the parties as well as the manifest purpose inducing the bond, that they did not intend to protect the indemnitee against his own or his servant's negligence.

The assignment of error is overruled, and the judgment is affirmed.