561 A.2d 33

Henry DESKIEWICZ & Patricia Ann Deskiewicz, Husband and Wife

v.

ZENITH RADIO CORPORATION, Zenith Electronics Corporation, International Piping Systems, and Robert Lempa, Estate of Steven Maruscak, Dec'd, Robert Franks, James Bakert, Apex Electrical Engineering Co., General Electric Co., & Joe Doe a/k/a Project Engineer For General Electric Co.

Appeal of ZENITH RADIO CORPORATION and Zenith Electronics Corporation.

Superior Court of Pennsylvania.

Argued Jan. 24, 1989.

Filed June 26, 1989.

Joel D. Gusky, Philadelphia, for appellants.

Gerard Bruderle, Philadelphia, for Intern. Piping, appellees.

Before BROSKY, McEWEN and OLSZEWSKI, JJ.

BROSKY, Judge:

This is an appeal from an order finding that appellee, International Pipings Systems (IPS), was not obligated to indemnify appellant, Zenith Radio Corporation for a liability imposed upon Zenith for personal injury. IPS was contracted by Zenith to dismantle a large machine and move it to a plant located in Illinois. An employee engaged in this process was injured and a settlement was later reached with Zenith. Zenith sought indemnification from IPS under a contractual clause.

Zenith raises two issues for resolution: (1) was IPS contractually obligated to indemnity Zenith the sum paid the plaintiff? and (2) was IPS contractually obligated to pay Zenith's attorneys fees and costs in defending the underlying action? Upon consideration of the arguments advanced by all parties, we reverse.

The facts relevant to disposition of this appeal are, briefly stated: On or about October 9, 1981, Zenith and IPS entered into a contract whereby IPS was required to disassemble, *inter alia,* a General Electric Oxidizer for reassembly at Zenith's manufacturing plant in Melrose Park, Illinois. Subsequently, IPS subcontracted the disassembly of the Oxidizer to plaintiff, Henry Deskiewicz. On the date of the accident, plaintiff sustained serious bodily injury when he jumped from an eight (8) foot-high platform

after he placed a screwdriver into a 30–amp switch which he believed to be de-energized. He had placed the screwdriver into the switch for the purpose of confirming the fact that the machine had been de-energized.

Extensive discovery revealed that the only defendants against whom plaintiffs had a viable claim were Zenith and IPS.

On June 23, 1988, the case at bar was assigned for trial. Prior to impanelling a jury, the trial court conducted a thorough pre-trial conference and heard the parties' respective contentions regarding liability and damages.

As a result of the conference, plaintiffs agreed to accept, if offered, $165,000.00. Later that day, plaintiffs agreed to accept 75% of the settlement demand or $123,-750.00 from Zenith. Subsequently, on June 27, 1988, plaintiffs accepted IPS's settlement offer of $40,000.00 and the case, as between plaintiffs and defendants, settled.

In Zenith's Answer to Plaintiffs' Complaint, it pleaded a crossclaim against IPS for contractual indemnity and for reimbursement of counsel fees and costs. This crossclaim was denied by IPS. Counsel for Zenith and IPS agreed that Judge Moss would retain jurisdiction over the case to resolve the contractual indemnity issue between them. With the trial court's permission, appellant and appellee submitted Stipulated Findings of Fact in lieu of live testimony.

On August 17, 1988, an Order was entered denying Zenith's contractual indemnity claims. This appeal followed.

A fundamental rule of construction in the law of contracts states that words, phrases and clauses will be given their plain and ordinary expressed meaning. If this is so, then this particular area of law, indemnification for damages or injuries arising from negligent acts, could be thought of as an exception to the general rule. If literal effect was given to these clauses then indemnification would be enforced. Yet due to policy and practical considerations decisions have been handed down indicating that

such generally worded indemnification clauses *will not be construed* to mean that the indemnitor will indemnify the indemnitee for liability resulting from the indemnitee's own negligence. See *Perry v. Payne, infra.* Cases holding thusly are creating a rule of construction, not an absolute rule. Increasingly since the first pronouncement of this rule of construction the rule has been recognized to be only that, a rule of construction; and, cases have been reported finding an indemnification clause to cover injuries arising from the joint negligence of indemnitor and indemnitee. The rule has evolved up to and including the relatively recent case of *Urban Redevelopment Authority v. Noralco Corp.*, 281 Pa.Super. 466, 422 A.2d 563 (1980), which further developed the rule to include concepts of active and passive negligence of the indemnitee. Of considerable importance also is the recognition in *Noralco*, that in addition to the four corners of the agreement, the surrounding circumstances must be considered in determining the scope of the clause. It is within this context that we examine the agreement in question here.

In this particular case, Zenith contracted IPS to perform the service of disassembling a large piece of machinery and transportation of it to a plant in Illinois. Zenith paid IPS approximately $29,000 for this service. The contract states:

> The contractor is an independent contractor, shall be in charge of the work, and shall be solely responsible for the acts and omissions of all his employees and all subcontractors, their agents and employees, and other persons performing any of the work for or under a contract with the contractor.

It was further stipulated that IPS and plaintiff had control over the manner in which the disassembly was to be performed. Of equal importance to our analysis is the indemnification clause itself, it reads:

> The contractor agrees to indemnify, hold harmless, and defend the owner, its subsidiaries, affiliated companies, and agents and employees ... from and against all claims or liabilities for damages (including costs of suit, attorney's fees of owner, and if awarded against owner by a

court, attorney's fees of claimant) in any manner arising out of or resulting from:

(a) Performance of the work, provided that any such claim or liability (1) is attributed to bodily injury ... and (2) is caused *in whole or in part* by any negligent act or omission of the contractor, any subcontractor, anyone directly or indirectly employed by any of them ... (emphasis supplied).

Of particular importance, in our opinion, is the language "in whole or in part by any negligent act." This is explicit language which envisions the possibility that IPS will be obligated to indemnify Zenith even though someone other than IPS has contributed, through a negligent act or omission, to the liability imposed upon Zenith. Furthermore, to the extent the factor which triggers the indemnification obligation is the assumption of, or imposition upon, Zenith of a liability for personal injury, certainly a negligent act of Zenith must be considered one of the more likely and logical prefaces to imposition of such liability upon Zenith, and as such, arguably within contemplation of the subject indemnification clause. In light of the wording of the clause, we believe, to remain consistent with *Noralco,* it is essential that all of the circumstances be considered in deciding whether indemnification will follow the subject clause under the facts presented here.

Another important paragraph in the contract reads:

SAFETY: The contractor shall be responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the work.

The contractor shall comply with all applicable laws, ordinances, rules, regulations and orders of any public authority having jurisdiction for the safety of persons or property to protect them or it from damages, injury or loss.

Another factor important to the analysis here, which was implicitly given credence in *Noralco,* is the obligation, under the subject contract, of the contractor to purchase or provide insurance coverage. With these key facts delineated we turn to the law of indemnification.

The *Noralco* case represents one of the more recent and thoroughly analyzed cases in this area of law. It set forth a paraphrasement of the early cases establishing the principle that such generally worded clauses will not be construed to cover liability from the indemnitee's own negligence. These cases recognize that to hold otherwise would be tantamount to placing the indemnitor in the position of an insurer. However, it is worth noting that the earlier cases making such a holding involved situations where the indemnitee was solely or principally responsible for the injury. This was the case in *Perry v. Payne*, 217 Pa. 252, 66 A. 553 (1907); and *Pittsburgh Steel Co. v. Patterson–Emerson–Comstock, Inc.*, 404 Pa. 53, 171 A.2d 185 (1961). Thus, allowing indemnification in those cases would have placed the indemnitor in, essentially, the position of an insurer.

*Noralco* also, at least implicitly, recognized that the circumstances surrounding usage of these clauses have changed since the time of the earlier decisions and that in reality such clauses are being used more and more to allocate risk of loss and the cost of providing insurance. The case further distinguished the concept of active and passive negligence and the importance those concepts play in construction of these clauses. *Noralco* essentially establishes that although parties would not generally be thought of providing indemnification where the injury is caused by the active negligence of the indemnitee, the same cannot be said when the indemnitee is partially responsible for the injury by virtue of passive negligence.

The rationale in *Noralco*, in this regard, is in keeping with the general rationale of *Perry* and its progeny. The true essence of those holdings is a simple recognition that in executing such a provision the indemnitor is not agreeing to insure the indemnitee against loss, but, rather is acknowledging that its own actions may result in liability being imposed upon the indemnitee, and that it will, in such cases, reimburse the indemnitee for that liability. However, this rationale is less convincing, if convincing at all, where the injury is the result of the indemnitor's active

negligence, and the indemnitee is, at most, passively negligent. In such a case the indemnitor can hardly be said to be "insuring" against the injury, for the injury would not have occurred absent the indemnitor's own negligence. Or, quite possibly, to put it into context with the contract, the injury would not have occurred if the work had been performed in a manner consistent with the contract.

Furthermore, it is not at all inconsistent with such an interpretation to state that a certain amount of passive negligence might be expected by the indemnitee in such cases. Often when such agreements are entered into they are done so because the indemnitee is asking the indemnitor to perform a function the indemnitee is not qualified to perform or does not wish to perform itself.

The present case is a fine example. Zenith contracted out the job of disassembly and moving the oxidizer. Although the exact reasoning of such choice is not of record some common reasons for such actions would be that Zenith lacked qualified personnel to perform the job, or to perform the job without substantial risk of injury to individuals or, perhaps, damage to the oxidizer. Furthermore, it would not be unreasonable for Zenith to expect the professionals contracted to be able to overcome potential obstacles or avoid pitfalls or hazards that its own personnel might not be able to do. Clearly this is often an expectation when professionals are hired to do a job and often a reason for such hiring. As such, allowing indemnification when the indemnitee is only passively negligent certainly would not run contrary to the general rationale in this area of law.

In analyzing the present case, the circumstances of the accident itself must be considered. Plaintiff was in the process of removing or displacing a generator atop of the oxidizer. It was essential that the oxidizer be "de-energized" and all power being fed into the machine be cut off. Stephen Maruscak, an engineer employed by Zenith was on hand to assist in electrical matters. Yet there is no indication that Maruscak was supervising the process, but rather that plaintiff and a Robert Lempa, of IPS, were in control of the work. Maruscak was asked by plaintiff and Lempa

to de-energize a 400–amp switch which provided power to a 30–amp switch which was part of the generator. Maruscak placed the 400–amp switch in the off position. Plaintiff then, for the purpose of double-checking to see if the generator had indeed been de-energized, inserted the tip of a screwdriver into the 30–amp switch whereupon sparks began to fly from the switch. After several seconds of repeated sparking, plaintiff, in fear for his safety, jumped from the top of the oxidizer injuring his leg.

It is clear that the fact that the generator was not de-energized was a key factor in the injury. The exact reason why the generator remained energized after the switch had been placed in the off position is unknown. An expert's report was included by reference to the stipulations of fact. This report indicates many negligent acts and omissions occurred.

We cannot agree with the trial court's conclusion that Zenith was actively negligent. The trial court reaches this conclusion primarily because Zenith's employee placed the switch in the off position yet the oxidizer remained energized. However, this does not compel a finding of active negligence. The failure to de-energize the oxidizer would be a result of active negligence if, perhaps, the switch had been clearly marked and Maruscak had mistakenly thrown the wrong switch. Yet the evidence does not support any such scenario. The evidence supports a finding that Maruscak threw what was believed to be the proper switch into the off position, yet the oxidizer remained energized. The expert report indicates that the possibilities for the oxidizer remaining energized included an ambiguous labeling of the switches, the existence of an undocumented feederpath to the switch, and a miswired upstream disconnecting device. Although the report indicates there were many shortcomings in the electrical setup, their contribution to the accident would have to be considered of a passive type. Even if the wrong switch was thrown by Maruscak, this would not compel a finding of active negligence if the switch was mis- or ambiguously labeled and a reasonable person would have believed that by throwing the switch the oxidizer had indeed

been de-energized. The facts stipulated to simply do not present a negligent throwing of the wrong switch.

In contrast, the negligence of IPS and plaintiff was of an active type. It included all of the shortcomings in the dismantling of the machine, including failure to follow proper electrical procedures and, of course, the actual act of sticking a screwdriver into an electrical switch for the purpose of testing it. As the expert opined, "if they had observed good engineering practice and industry standards, he would not have been injured." Mazer report, p. 4.

In consideration of all the factors present in this case, as we believe we must consider under *Noralco,* we believe that due to the fact: (1) that the job was hired out to professionals; (2) that IPS and the plaintiff were given full control over the performance of the work; (3) that IPS was contractually obligated to follow applicable safety laws and regulations and was obligated to provide insurance; and (4) that under the wording of the clause, IPS was liable over to Zenith for damages assessed against injuries arising in whole or *in part* out of its negligence. The reasonable expectations of the parties would indicate that IPS would be bound to indemnify Zenith for liability imposed upon Zenith where IPS was at least partly responsible and where Zenith was not wholly responsible.

Zenith is in a position to argue that but for the negligence of IPS no accident would have occurred. Although, Zenith's passive negligence certainly played a role in the occurence of the accident, they can just as clearly argue that had IPS simply complied with the contract and performed the work in a professional manner, no accident would have occurred. As such, IPS, by virtue of such a construction, is not even remotely being put, in this case, in the role of insurer and Zenith is, in essence, merely being given the benefit of its bargain. We further believe the case of *Babcock & Wilcox Co. v. Fischbach & Moore, Inc.,* 218 Pa.Super. 324, 280 A.2d 582 (1971), supports this conclusion.

In *Babcock,* this court considered an indemnification situation subject to a clause similar to the one in question here.

That clause stated that the indemnitor-contractor would indemnify Babcock for any claim on account of injury to any person arising *in whole or in part* out of the wrongful acts or omissions of the contractor. This phrase was followed with a statement that the indemnification agreement shall not include injuries due wholly to the negligence of Babcock. The court indicated that the "in whole or in part" language could be read to except the negligence of the indemnitee, but ultimately rejected this interpretation. The court referred to the clause in the following fashion:

> We find no ambiguity in the terms of the agreement but, on the contrary, find it explicit in its terms. It clearly and unequivocally shows the intention of the parties to have been that F. & M., the contractor, agreed to indemnify B. & W. for any and all claims, etc., arising in whole or in part out of the wrongful acts or omissions of F. & M., its employees, agents or servants, which included claims from accidents for which B. & W. was partly at fault, but not to do so for claims arising wholly from the negligence of B. & W.

Although the court seemed to find the statement that no indemnification would follow if the injury was due wholly to Babcock's negligence a factor in reaching their conclusion, further consideration of the clause suggests that the statement is really superfluous and adds nothing to the agreement. To the extent an injury was due *wholly* to Babcock's negligence, and thus within the scope of the second phrase, it would not be due in whole or in part to the indemnitor. The indemnitor's obligation was not triggered, under the agreement, unless its negligence was at least partly responsible for the event bringing rise to the liability. As such, the second phrase does nothing more than restate the general proposition established in *Perry*, that the indemnitor will not be put in the position of an insurer. The key to *Babcock* was that the phraseology "in whole or in part" differed from standard indemnification language and was construed by the court to be broader than the standard clause, and broad enough to encompass injury arising from the joint negligence of the indemnitor and indemnitee.

As a secondary matter, appellant argues that it is also entitled to counsel fees and costs incurred in the underlying action for personal injury. Based upon the decision of our Supreme Court in *Boiler Engineering and Supply Co. v. General Controls, Inc.*, 443 Pa. 44, 277 A.2d 812 (1971) we are inclined to agree. The trial court incorrectly concluded that appellant's cases on this issue involved issues of insurer's and insureds. However, *Boiler Engineering* involved the same issue in a conflict between indemnitor and indemnitee which were not insurer and insured.

For the above reasons, we reverse the order appealed from and remand to the trial court for any further necessary actions.

Reversed and remanded. Jurisdiction relinquished.

McEWEN, J., files a concurring statement.

McEWEN, Judge, concurring:

I write only to assure that the insightful analysis of the indemnification issue provided in the majority opinion does not obscure the particular conclusion which I find controlling, namely, that the contract between the parties revealed their expectation that IPS would be bound to indemnify Zenith for liability imposed upon Zenith where IPS was at least partly responsible, and where Zenith was not wholly responsible, for the injuries suffered by a claimant.