Susan E. CLEMENT, Plaintiff,

v.

CONSOLIDATED RAIL CORPORATION, et al., Defendants.

Civ. No. 88–3793 (CSF).

United States District Court, D. New Jersey.

Sept. 4, 1990.

Connell, Foley & Geiser by Samuel D. Lord, Roseland, N.J., for defendant Consol. Rail Corp.

Smith, Stratton, Wise, Heher & Brennan by Peter R. Freed, Trenton, N.J., for defendant Pennsylvania Truck Lines, Inc.

OPINION

CLARKSON S. FISHER, District Judge.

This litigation stems from an accident which took the life of Thomas Allen Clem-

ent, an employee of defendant Pennsylvania Truck Lines, Inc. ("PTL"), who drove a pick-up truck into a chassis which was situated alongside Track D in defendant Consolidated Rail Corporation's Trailvan Terminal in South Kearny, New Jersey. The defendants are presently before the court moving for summary judgment on Conrail's crossclaim against PTL for indemnity. For the reasons set forth below, PTL will not be required to indemnify Conrail for Conrail's own negligence.

FACTS

Conrail is engaged in the business of transporting highway trailers and containers upon railroad flatcars. In order to coordinate the handling of such trailers and to arrange for their loading and unloading, Conrail entered into a "Services Agreement" with PTL, a wholly-owned subsidiary of Conrail at the time of the accident. The parties entered into that agreement on June 15, 1985, recognizing that PTL had the expertise, experience and special equipment necessary to assume many of the day-to-day operations at, among other places, Conrail's South Kearny Trailvan Terminal.

The agreement divides the functions delegated to PTL into three categories: management services, terminal and clerical services and miscellaneous services. Specific duties are detailed in a series of documents appended to the back of the agreement. In essence, the agreement transfers responsibility for virtually all terminal operations to PTL.

Paul Neff, a member of PTL's Board of Directors and its Vice President of Finance and Administration, was intimately involved in drafting the agreement. Neff Deposition at 64. He explained that a prior agreement between the parties delegated fewer responsibilities to PTL; however, that agreement proved unsuitable following a change in the "organizational structure of PTL." Neff stated that:

the major difference was [that] prior to 1980 PTL was simply nothing but a subcontract lift operator at the terminals. And after 1980, not only [was PTL] a lift operator but [it was] responsible for management of the terminal, responsible for all trailer repairs, ... [and] responsible for management and control of the trail van fleet....

*Id.* at 67. Thus, the Services Agreement reflected the "major change in the way that Conrail and PTL related to one another," *id.* at 65, insofar as it detailed the additional responsibilities for which PTL was to be accountable.

Section 4.5 of the Services Agreement contains a detailed indemnification provision. It requires PTL to:

protect, indemnify and hold harmless Conrail against and from any and all claims, losses, liability, suits, actions, judgments, costs and expenses ... including [those] resulting ... from [the] injury or death of any person ... *to the extent such event shall have arisen* from any act of commission or omission, negligent or otherwise, of [PTL], or of any of [PTL's] agents, servants, or employees....

*See* Services Agreement, Section 4.5 (emphasis added). A similar provision was contained in the former agreement; however, it had sharply limited Conrail's right to indemnification to those instances where the event triggering liability arose solely from PTL's conduct.[1]

As set forth earlier, this litigation stems from the accidental death of Thomas Clement. Susan Clement, as administratrix of his estate, individually, and as legal guardian of their children, filed this action alleging, among other things, that negligence on the part of Conrail and PTL caused her husband's death. In its crossclaim against PTL, Conrail argues that it is entitled to complete indemnification from PTL under

1. The indemnification provision in the former agreement required PTL to:
   protect, indemnify and hold harmless Conrail against and from any and all claims, losses, liability, suits, actions, judgments, costs and expenses ... including [those] resulting ...

from [the] injury or death of any person ... <u>if such event shall have arisen solely</u> from any act of commission or omission, negligent or otherwise, of [PTL], or of any of [PTL's] agents, servants, or employees ... (emphasis added).

the aforesaid Services Agreement, even if its negligence contributed to the accident. PTL contends otherwise. Both parties are presently before the court moving for summary judgment.

DISCUSSION

Under Pennsylvania law,[2] it is well settled that a contract will not be construed to indemnify a party for its own negligence unless such a provision is expressed in unequivocal terms. *Pittsburgh Steel Co. v. Patterson–Emerson–Comstock, Inc.,* 404 Pa. 53, 171 A.2d 185 (1961); *Perry v. Payne,* 217 Pa. 252, 66 A. 553 (1907); *Bush v. Chicago & Northwestern Transp. Corp.,* 522 F.Supp. 585 (E.D.Pa.1981). In explaining the rationale behind this rule, the Pennsylvania Supreme Court noted that it would be "contrary to experience and reason" for a contractor to subject itself to "uncertain and indefinite" liability by agreeing to indemnify an entity for its own negligence. *Perry,* 66 A. at 555. Thus, there can be no presumption that the indemnitor intended to assume such responsibility "unless the contract puts it beyond doubt." *Pittsburgh Steel,* 171 A.2d at 188.

Although such clear expressions of intent have traditionally required specific mention of "the word negligence or any of its cognates," *see Bush,* 522 F.Supp. at 587; *Westinghouse Electric Co. v. Murphy, Inc.,* 425 Pa. 166, 228 A.2d 656, 658 (1967), the court may look beyond the "four corners of [an ambiguous agreement] to determine whether it specifies losses caused by the indemnitee's negligence." *Urban Redevelopment Auth. v. Noralco Corp.,* 281 Pa.Super. 466, 422 A.2d 563, 567 (1980). *See also Brotherton Const. Co. v. Patterson–Emerson–Comstock, Inc.,* 406 Pa. 400, 178 A.2d 696, 697 (1962) (the court "is not confined to the language used" when construing an indemnification agreement). In the instant matter, therefore, the court "may consider the circumstances surrounding the parties and their object in making the agreement." *Brotherton Const.,* 178 A.2d at 697. Further, the nature of the

indemnitor's duty and the active and/or passive negligence of the indemnitee may also be relevant in determining the scope of the indemnification clause. *See Deskiewicz v. Zenith Radio Corp.,* 385 Pa.Super. 374, 561 A.2d 33 (1989).

In ascertaining the parties' intent, the court must first look to the specific language agreed upon. *Id.* 561 A.2d at 35. In so doing, the court notes that the indemnification provision in Services Agreement does not unequivocally provide that indemnification is due Conrail for damages resulting from its negligence. Rather, the agreement states that PTL will indemnify Conrail "to the extent" that the event triggering liability is attributable to PTL's conduct. The phrase "to the extent" does not expose PTL to unbridled liability; instead, it is a term of limitation. *See e.g., Spencer v. Laconia School Dist.,* 107 N.H. 125, 218 A.2d 437, 440 (1966) ("the words 'to the extent of' were intended to fix ... the outside limit of recovery"); *Fed. Deposit Ins. Corp. v. Citizens State Bank of Niangua,* 130 F.2d 102, 103 (8th Cir.1942) (equating the phrase "to the extent" with "as to the portion of"); *Webster's New Collegiate Dictionary* at 402 (1979) (extent defined as "the point, degree or limit to which something extends"). Thus, when it agreed to indemnify Conrail "to the extent" that the liability-producing event (*i.e.,* Clement's death) arose from its conduct, PTL did not assume absolute responsibility for Conrail's negligent acts; *instead, it limited its exposure to liability.*

This conclusion is buttressed by an examination of the prior contract between PTL and Conrail. The indemnification provision in that agreement required PTL to indemnify Conrail *if* the event triggering Conrail's liability arose "solely from any act ... negligent or otherwise, of [PTL]...." This provision limited Conrail's right to indemnity to the occasional instance where a liability-producing event arose *solely* from the action or inaction of PTL. In June, 1985, when the parties entered into the

---

**2.** Section 4.15 provides that the Services Agreement "shall be construed in accordance with the laws of the Commonwealth of Pennsylvania."

Services Agreement, the scope of the indemnification provision was broadened.

The lone variation between the indemnification provision in the present and former agreements is found in the phrase immediately following the events triggering liability. The former agreement read, in part, as follows:

> [PTL] shall protect, indemnify and hold harmless Conrail against and from any and all claims, losses, liability, suits, actions, judgments, costs and expenses ... including [those] resulting ... from [the] injury or death of any person ... if such event shall have arisen solely from any act of commission or omission, negligent or otherwise, of [PTL], or of any of [PTL's] agents, servants, or employees. . . .

The Services Agreement modified that provision by substituting "to the extent that such event shall have arisen" in place of the underscored language. If, as Conrail argues, the parties intended to indemnify Conrail for its own negligent acts, simply removing the word "solely" from the former agreement would have shielded Conrail from such liability. If such were the case, the Services Agreement would have required PTL to indemnify Conrail if the event triggering Conrail's liability arose from *any* conduct, negligent or otherwise, attributable to PTL. *See Deskiewicz v. Zenith Radio Corp.*, 385 Pa.Super. 374, 561 A.2d 33 (1989) (indemnitee entitled to indemnification from liability resulting from its own negligence if the event triggering liability was "caused in whole or in part" by indemnitor's conduct).

Rather than deleting the word "solely", it was agreed that PTL would indemnify Conrail "to the extent" that liability arose from its conduct. This choice of wording represents a middle ground between the circumscribed indemnity of the former agreement (*i.e.*, indemnity if the liability-producing event arose *solely* from PTL's conduct) and the sweeping breadth of the clause had the word "solely" been deleted (*i.e.*, indemnity if the liability-producing event arose from PTL's conduct). This compromise entitles Conrail to indemnity even if PTL is not solely responsible; however, such indemnity would be limited "to the extent" that the event triggering liability arose from PTL's conduct.[3]

Since the indemnification provision fails to express in "clear, precise and unequivocal" terms that Conrail is entitled to complete indemnity from PTL for damages attributable to its own negligent acts, the provision does not, on its surface, satisfy the strict standards imposed by Pennsylvania law. However, as set forth earlier, the court is not limited to the words employed when divining the intent of parties in making an indemnity agreement. When the parties' intent is open to debate, "the indemnity clause should be viewed realistically as an effort by businessmen to allocate between them the costs and risk of accidents apt to arise." *Norfolk & Western Railway Co. v. Hardinger Transfer Co.*, 415 F.Supp. 507, 511 (W.D.Pa.1976).

The Services Agreement sets forth the "broad contractual relationship" between PTL and Conrail; it reflects the change in the organizational structure of each company as PTL assumed greater responsibilities at the Conrail terminals. Neff Deposition at 62–66. In addition to retaining complete control over lift operations, PTL assumed substantial management functions at the terminals. For example, as set forth in the addenda attached to the Services Agreement, PTL was required to:

---

3. Of course, if PTL were in no way responsible for the liability-producing event, the indemnification provision would not be implicated under either the Services Agreement or its predecessor. Both agreements state that:

> in no event shall [PTL] be responsible under this Agreement for any claim, loss, damage, liability, suit, action, judgment, cost and expense which are proven by any claimant to have resulted solely from any negligent act of commission or omission of Conrail or which are proven by any claimant to have resulted solely from the concurrent act of commission or omission of Conrail or any of Conrail's agents, servants or employees, and anyone other than [PTL] and/or [PTL's] agents, servants or employees.

Thus, conduct on the part of PTL is a predicate to indemnification under both agreements.

supervise gate inspections, repair and maintain trailers, perform yard checks, control movement of trailers, prepare interchange reports, supervise drayage operations, supply engineering advice, exercise control over and manage trailvan equipment, negotiate trailer leases, perform cost and accounting analyses, load and unload trailers, secure trailers to flat cars, physically inspect trailers, maintain equipment records, clear snow and ice, etc.

Moreover, PTL was to assist Conrail with other functions at the terminals.

Concomitant with PTL's expanded role at the terminal was the requirement that PTL shoulder greater responsibility for the potential damages which may inure to Conrail because of PTL's conduct. This was achieved by altering the indemnification provision. No longer was PTL's obligation to indemnify Conrail limited to situations where the event triggering liability arose *solely* from its conduct; instead, PTL was required to indemnify Conrail from any and all claims "to the extent" that the liability-producing event arose from its actions. While this change reflects a business decision to allocate greater liability exposure to PTL, the language used cannot reasonably be construed to require PTL to fully indemnify Conrail from liability arising from its own negligent conduct.

Conrail argues that it is entitled to complete indemnification if PTL was "in any way" responsible for Clement's death; however, such broad language is not found in the Services Agreement. Likewise, such an interpretation cannot be inferred from the surrounding circumstances. *See Brotherton Construction Co.,* 178 A.2d at 697. The parties agreed that PTL would indemnify Conrail only "to the extent" that the event triggering liability arose from PTL's conduct. The phrase "to the extent" in no way manifests an intention to completely indemnify Conrail if PTL was responsible "in any way" for Clement's death. To indemnify "to the extent" is to set a limit, a boundary beyond which indemnification is not required.

The most natural reading of the revised language does not require PTL to indemnify Conrail for Conrail's own negligent conduct. The fact that PTL is obligated to "procure and maintain" insurance coverage does not compel a different conclusion. *See Safeco Ins. Co. v. Great American Ins. Co.,* 523 F.Supp. 983, 986 (E.D.Pa. 1981). Indeed, PTL's obligation to obtain insurance reflects the fact that its duty to indemnify is no longer limited to those instances where the event triggering liability arose solely from its conduct.

Further, the indemnification provision does not envision the imposition of liability upon PTL for the wrongful conduct of third parties. *Cf. Deskiewicz v. Zenith Radio Corp.,* 385 Pa.Super. 374, 561 A.2d 33 (1989) (contractor required to indemnify indemnitee for indemnitee's own negligence under agreement entitling indemnitee to indemnification if the event triggering liability was "caused in whole or in part" by contractor's conduct). In *Deskiewicz,* the court stated that the "in whole or in part" language recognizes the possibility that the contractor would be obligated to fully indemnify the indemnitee "even though someone other than [the contractor] contributed, through a negligent act or otherwise, to the liability imposed upon [the indemnitee]." *Id.* 561 A.2d at 35. In contrast, the language in the present agreement, indemnifying Conrail "to the extent" that the liability-producing event arose from PTL's conduct, does not oblige PTL to indemnify Conrail for the negligent acts of either Conrail or a third party, regardless of whether that negligence is active or passive.

It is well settled that a contract will not be construed to indemnify a party for its own negligent acts unless such an intention is expressed in clear and unequivocal terms. In the instant matter, such an intent has not been clearly stated; therefore, Conrail's motion seeking indemnification from PTL for its own negligent conduct will be denied. An order accompanies this opinion. No costs.

### ORDER

This matter having come before the court on cross-motions by defendants Consolidated Rail Corporation and Pennsylvania Truck Lines, Inc. for summary judgment on Consolidated Rail Corporation's crossclaim for indemnification against Pennsylvania Truck Lines; and the court having considered the written submissions and oral argument of counsel; and good cause appearing,

IT IS on this 4th day of September, 1990,

ORDERED that Consolidated Rail Corporation's motion for summary judgment on its crossclaim for indemnification against Pennsylvania Truck Lines, Inc. be and hereby is denied; and it is further

ORDERED that Pennsylvania Truck Lines, Inc.'s cross-motion for summary judgment on the crossclaim of Consolidated Rail Corporation be and hereby is granted.