963 F.2d 599
 Susan E. CLEMENT, Administratrix Ad Prosequendum of the
Estate of Thomas Allen Clement, Deceased, Individually, and
as Legal Guardian for and on Behalf of Matthew Gordon
Clement and Elizabeth Anne Clement, Minor Children
v.
CONSOLIDATED RAIL CORPORATION, Pennsylvania Truck Lines,
Inc., American Presidents, Inc., Theurer, Inc.;
and John Does 1 through 10,
Consolidated Rail Corporation, Appellant.
 No. 91-5668.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 27, 1992.
Decided May 12, 1992.
 
 Samuel D. Lord (argued), Connell, Foley & Geiser, Roseland, N.J., for appellant.
 Peter R. Freed (argued), Smith, Stratton, Wise, Heher & Brennan, Trenton, N.J., for appellee.
 Before: SLOVITER, Chief Judge, and SCIRICA and NYGAARD, Circuit Judges.
 OPINION OF THE COURT
 NYGAARD, Circuit Judge.
 
 
 1
 One night Thomas Allen Clement was killed when he drove his pickup truck into a disabled flatbed trailer that had been dragged onto and left in the roadway. He was working at the time of the collision for Pennsylvania Truck Lines, Inc. ("PTL"), a wholly owned subsidiary of Consolidated Rail Corporation ("Conrail"). Clement's widow sued PTL, Conrail and others[1] on behalf of their children and herself. Conrail crossclaimed against PTL on an indemnification agreement between them. The district court granted PTL's motion for summary judgment on plaintiff's claim because her exclusive remedy was under the New Jersey's Workers' Compensation Act, N.J.Stat.Ann. §§ 34:15-1 to 15-128 (West 1991). This judgment was not appealed. She then settled her claim against Conrail. The district court next granted PTL's motion for summary judgment on the crossclaim, 745 F.Supp. 266, holding that Conrail was not entitled to any indemnification. Conrail appeals this judgment. We conclude that the agreement affords Conrail some indemnity if the events causing Clement's death arose from PTL's acts while PTL was performing duties under the agreement. Because the district court erred in construing the agreement and disputed issues of material fact remain, we will reverse the judgment and remand the cause for trial.
 
 I.
 
 2
 We have jurisdiction pursuant to 28 U.S.C. § 1291, and exercise plenary review of the order granting summary judgment. Philadelphia and Reading Corp. v. United States, 944 F.2d 1063, 1070 (3d Cir.1991). We apply the same test as the district court should have applied in the first instance, that is, we ask whether there remains a genuine issue of material fact, and if not, whether movant is entitled to judgment as a matter of law. Int'l Union, United Mineworkers v. Racho Trucking Co., 897 F.2d 1248, 1252 (3d Cir.1990). We must view all facts and all inferences in the light most favorable to the nonmoving party. Erie Telecommunications, Inc. v. Erie, 853 F.2d 1084, 1093 (3d Cir.1988).
 
 
 3
 Also, in determining whether the Terminal Services Agreement between Conrail and PTL is ambiguous, we exercise plenary review determining "as a matter of law which category written contract terms fall into--clear or ambiguous." Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1011 (3d Cir.1980). "Under Pennsylvania law, ambiguous writings are interpreted by the factfinder and unambiguous writings are interpreted by the court...." Id., at 1011 n. 10 (citing Brokers Title Insurance Company, Inc. v. St. Paul Fire & Marine Insurance Co., 610 F.2d 1174 (3d Cir.1979).
 
 II.
 
 4
 Clement was employed by defendant PTL as an assistant manager and supervisor specializing in unloading trains carrying containerized freight. The roadway upon which Clement was traveling at the time of the accident ran through the South Kearny Trailvan Terminal, owned by Conrail, which is in the business of transporting highway trailers and containerized freight from railroad flatcars. The flatbed trailer chassis was of the type used for off-loading shipping containers from railroad cars. Flatbeds are usually parked adjacent to railroad tracks, at an angle permitting them to receive containers off-loaded from the trains. But, because it was disabled by frozen brakes, the flatbed Clement struck had been dragged by PTL employees away from the rails to a position thirty-two feet onto the nearby roadway.
 
 III.
 
 5
 In order to coordinate handling of flatbed trailers and to arrange for their loading, Conrail entered into the Terminal Services Agreement with PTL. The Agreement establishes an extensive contractual relationship between Conrail and PTL. Only one provision of the contract, however, is at issue. Section 4.5 of the Terminal Services Agreement contains a detailed indemnification provision. It obligates PTL as follows:
 
 
 6
 [PTL] shall assume all responsibility for and shall protect, indemnify and hold harmless Conrail against and from any and all claims, losses, damages, liability, suits, actions, judgments, costs and expenses ... including [those] resulting ... from [the] injury or death of any person ... to the extent such event shall have arisen from any act of commission or omission, negligent or otherwise, of [PTL], or of any of [PTL's] agents, servants, or employees ... in performing or failing to perform any of the contractual duties or obligations required by this agreement.... Provided, further, that in no event shall [PTL] be responsible under this agreement for any claim, loss, damage, liability, suit, action, judgment, cost and expense which are proven by any claimant to have resulted solely from any negligent act of commission or omission of Conrail or which are proven by any claimant to have resulted solely from the concurrent act of omission or commission of Conrail ... and anyone other than [PTL.]
 
 
 7
 Joint Appendix, at 63-65 (emphasis added).
 
 
 8
 This contractual provision is the focus of Conrail's and PTL's dispute. Specifically, the issue is whether the district court erred when it granted summary judgment to PTL by concluding that PTL is not required to indemnify Conrail in any amount under the indemnification clause in the Agreement.[2]
 
 
 9
 Conrail contends that PTL should be required to indemnify Conrail for the full amount it paid to settle Clement's claim. Conrail argues that the disputed clause of the Agreement should be interpreted to indemnify Conrail for Conrail's own negligence, in addition to PTL's acts. However, the district court concluded the language of the agreement "cannot reasonably be construed to require PTL to fully indemnify Conrail from liability resulting from its own negligent conduct" and, therefore, Conrail was not entitled to any indemnification. 745 F.Supp. at 270. We think this conclusion is wrong.
 
 
 10
 Under Pennsylvania law an agreement will not be construed to mean that the indemnitor will indemnify the indemnitee for liability resulting from the indemnitee's own negligence, Deskiewicz v. Zenith Radio Corp., 385 Pa.Super. 374, 561 A.2d 33, 35 (1989), unless such a provision is expressed in unequivocal terms. Pittsburgh Steel Co. v. Patterson-Emerson-Comstock, Inc., 404 Pa. 53, 171 A.2d 185 (1961).[3] It would be "contrary to experience or reason" for a contractor to subject itself to "uncertain and indefinite" liability by agreeing to indemnify another for the other's own negligence. Perry v. Payne, 217 Pa. 252, 66 A. 553, 555 (1907); see also Ruzzi v. Butler Petroleum Co., 527 Pa. 1, 588 A.2d 1, 4 (1991).
 
 
 11
 Hence, there can be no presumption that PTL intended to assume responsibility for Conrail's negligence "unless the contract puts it beyond doubt." Pittsburgh Steel, 404 Pa. at 59, 171 A.2d at 188, quoting Perry, 217 Pa. at 262, 66 A. at 557. Although unequivocal expressions of intent have historically required specific mention of "the word negligence or any of its cognates," Bush v. Chicago and Northwestern Transp. Corp., 522 F.Supp. 585, 587 (E.D.Pa.1981), we may look beyond the four corners of the agreement if it is ambiguous. Urban Redevelopment Auth. v. Noralco Corp., 281 Pa.Super. 466, 422 A.2d 563, 567 (1980).
 
 
 12
 The disputed indemnification clause is not, however, ambiguous. PTL never agreed to indemnify Conrail for Conrail's negligence. When the parties used the language "to the extent such event shall have arisen from any act ... of [PTL]," they left no doubt as to their intention to indemnify Conrail against only PTL's acts.
 
 
 13
 Consequently, we need not (and cannot) go beyond the four corners of the agreement to conclude that the parties meant PTL should not indemnify Conrail for Conrail's own negligence. The district court was correct that the indemnification clause failed to express in "clear, precise and unequivocal" terms that Conrail is entitled to complete indemnity from PTL for the consequences of Conrail's negligent acts. 745 F.Supp. at 269.
 
 
 14
 Nonetheless, the disputed provision does afford Conrail some indemnity, if "the event shall have arisen from any act" of PTL "in performing or failing to perform any of [PTL's] ... contractual duties or obligations" under the Agreement. It may be, as Conrail contends, that Conrail is entitled to full indemnification of the amount Conrail paid in settlement, but we cannot tell from the record. PTL may owe something to Conrail, if PTL's acts or omissions under the Agreement contributed in some measure to Clement's death.
 
 
 15
 Hence, the district court erred by denying any indemnity without first determining if the event causing Clement's death resulted, wholly or in part, from PTL's acts or omissions under the Agreement. "[T]o the extent" PTL's conduct contributed to Clement's death, PTL must be required to indemnify Conrail. The expression "to the extent" means specifically that Conrail should be indemnified in an amount equivalent to the proportion PTL's acts bear to the whole of the acts or omissions that caused Clement's death. This may, of course, run anywhere from zero percent to one hundred percent depending upon how the trier of fact apportions responsibility between PTL and others.
 
 IV.
 
 16
 Since the percentage of responsibility attributable to PTL presents a disputed, outstanding issue of material fact, summary judgment was improvidently granted. Consequently, we will reverse the district court's order granting PTL's Cross-Motion for Summary Judgment on Contrail's crossclaim for indemnification. We will remand the cause to the district court for it to try the issue of the cause or causes of Clement's death, and to determine the "extent," if any, of PTL's responsibility for Clement's death.
 
 
 
 [1]
 Clement's original complaint named two additional defendants not present here, American President Lines, Inc. and Theurer, Inc. American President Lines was dismissed from the action on March 20, 1992, after it settled all remaining claims with Conrail. Theurer was never a party to this action because it was never served with process after the original complaint was filed. That Theurer's name remains in the caption of this matter is due only to an oversight
 
 
 [2]
 We recognize that, in New Jersey, an employer governed by the Workers' Compensation Act is not liable for contribution to third-party tortfeasors, no matter what may be the comparative negligence as between the third party and the employer. See Ramos v. Browning Ferris Industries, Inc., 103 N.J. 177, 510 A.2d 1152, 1155 (1986). However, nothing in the Worker's Compensation Act precludes an employer from assuming a contractual duty to indemnify a third-party with an express agreement. Id., 510 A.2d at 1159
 
 
 [3]
 Conrail and PTL agree that the Terminal Services Agreement is to be construed in accordance with Pennsylvania law. Terminal Services Agreement, Section 4.15. Joint Appendix at 75