In re **ORIENTAL REPUBLIC OF URUGUAY (Commando General de La Armada and Servicio de Bugues Auxuliares) as Owner and Operator of the M/V PRESIDENTE RIVERA for exoneration from or limitation of liability.**

Civ. A. No. 90–404–SLR.

United States District Court, D. Delaware.

Sept. 29, 1992.

Francis J. Murphy, and Randall E. Robbins, Ashby & Geddes, Wilmington, DE, for plaintiffs Oriental Republic Uruguay, Presidente Rivera, Servicio de Buques Auxiliares de La Armada and Captain Raul DiBarrart.

Jeanne L. Langdon, and Keith A. Trostle, DE Dept. of Justice, Wilmington, DE, for claimant State of DE.

Michael B. McCauley, Palmer, Biezup & Henderson, Wilmington, DE, and Kevin G. O'Donovan, Palmer, Biezup & Henderson, Philadelphia, PA, for claimant DE Terminal Co.

Peter E. Hess, Wilmington, DE, for claimants I Did the Delaware, Old Seventh Street Boat Yard, Inc., Up the Creek Restaurant and Bar, Inc., and Phillips Holding Co., Ltd.

Jeffrey Weiner, Law Offices of Jeffrey Weiner, Wilmington, DE, and Gerald J. Williams, Mark R. Cuker, and Alan H. Casper, Williams & Cuker, Philadelphia, PA, for claimants Penns Grove NJ Residents.

Paul M. Lukoff, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, DE, and Ed-

ward C. Radzik, and James P. Krauzlis, Donovan, Parry, Walsh & Repetto, New York City, for claimant Petroleo Brasileiro S.A.

Wanda Chin Monahan, Dept. of Law and Public Safety, Div. of Law, and Martin J. McHugh, Hazardous Waste Litigation Section, Div. of Law, Trenton, NJ, for claimant State of NJ.

James S. Green, Duane, Morris & Heckscher, Wilmington, DE, and Francis J. Deasey, Deasey, Mahoney & Bender, Ltd., Philadelphia, PA, for claimant Sun Refining and Marketing Co.

Patricia C. Hannigan, U.S. Attys. Office, Wilmington, DE, Michael McIntyre, Environment & Natural Resources Div., EES, Washington, DC, and Peter F. Frost, Torts Branch, Civ. Div., Washington, DC, for claimant U.S.

## MEMORANDUM OPINION

SUE L. ROBINSON, District Judge.

### I. Introduction

On June 24, 1989, the M/V PRESIDENTE RIVERA, an oil tanker owned and operated by the government of the Oriental Republic of Uruguay ("limitation plaintiff"), ran aground in the Delaware River. The tanker's hull ruptured and the vessel subsequently discharged over 183,000 gallons of fuel oil into the water.[1] At the time of the accident, the tanker was manned by a complement of Uruguayan nationals on active duty in the Uruguayan Navy and by a licensed Delaware River pilot who the ship had taken on at the entrance to Delaware Bay.

Record evidence shows that the oil spill was the result of a series of mishaps that began when the "ship's port anchor was prematurely let go in the Delaware River...." (D.I. 103 at A–18) The vessel eventually went aground during a maneuver made "in attempt to turn the vessel back upriver after picking up the port anchor." (D.I. at A–19) It is undisputed that the oil spill caused by the grounding of the PRESIDENTE RIVERA resulted in extensive damage to the shores and waters of the United States, Delaware, New Jersey and Pennsylvania requiring massive clean-up efforts. In addition, a substantial amount of private property damage apparently resulted from the spill.

As a result of this oil spill, numerous parties commenced legal action against the Oriental Republic of Uruguay as owner and operator of the PRESIDENTE RIVERA. Uruguay responded to these lawsuits by instituting the instant proceeding which seeks exoneration from or limitation of liability pursuant to the Limitation of Liability Act, 46 U.S.C.App. § 183(a). Various governmental entities, specifically the United States of America and the states of Delaware, New Jersey and Pennsylvania[2], filed claims against the PRESIDENTE RIVERA in this limitation proceeding. Additionally, a number of private parties filed claims against the limitation plaintiff. Presently before the court are motions for partial summary judgment on the issue of liability filed by the United States and the State of Delaware.

### II. Standard of Review

As stated by the Supreme Court, "[s]ummary judgment procedure is procedurally regarded, not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Federal Rule of Civil Procedure 56(c) provides that a party is entitled to a summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and

---

1. It is admitted by limitation plaintiff that "approximately 183,184 gallons of oil were spilled." D.I. 113 at 3. However, record evidence indicates that over 300,000 gallons of oil may have been released by the PRESIDENTE RIVERA. The precise amount of oil released by the tanker is a factual issue which is unnecessary to resolve at this time.

2. Four agencies of the Commonwealth of Pennsylvania and limitation plaintiff have settled Pennsylvania's claim against plaintiff. A Stipulation of Settlement was entered into the court record. (D.I. 84).

that the moving party is entitled to a judgment as a matter of law." A party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

After the movant satisfies its initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact and which establishes the movant's entitlement to judgment as a matter of law, the burden then shifts to the nonmoving party to produce, from the same sources enumerated by Rule 56 and listed above, contrary evidence which supports its position that genuine issues of material fact prevent summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is "genuine" "if a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Although the Court must consider all inferences favorable to the nonmoving party which may be reasonably drawn from the evidence, *United States v. New Castle County*, 769 F.Supp. 591, 595 (D.Del.1991), "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the [factfinder] could reasonably find for the nonmoving party." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

### III. *The United States' Motion for Partial Summary Judgment*

 Claimant, the United States of America, moves for partial summary judgment on the issue of limitation plaintiff's liability under the Federal Water Pollution Control Act ("FWPCA" or "the Act"), 33 U.S.C. § 1321. The FWPCA prohibits the "discharge of oil" in "harmful" quantities[3] "into or upon the navigable waters of the United States, adjoining shorelines, or into or upon the waters of the contiguous zone...." The FWPCA imposes strict liability, with four limited exceptions, upon the owner or operator of a vessel which violates the Act. 33 U.S.C. § 1321(f)(1); *see also Total Petroleum Inc. v. U.S.*, 12 Cl.Ct. 178, 180 (1987). The owner or operator of a vessel that discharges harmful quantities of oil into the navigable waters of the United States is strictly liable for the costs[4] of removal of the spilled oil. 33 U.S.C. § 1321(f)(1).

The record clearly shows that the PRESIDENTE RIVERA discharged oil in harmful quantities into the Delaware River, a navigable waterway of the United States. (D.I. 104, Attachment 1) It appears that the limitation plaintiff does not dispute this fact or its liability under the FWPCA. (D.I. 115 at 5 ("Petitioner has never contested liability for clean-up costs, proven damages, and appropriate penalties.")) Limitation plaintiff, therefore, is liable to the United States under the FWPCA for removal costs and partial summary judgment should be granted for the United States unless limitation plaintiff raised a genuine issue of material fact as to a valid defense or statutory limitation on liability.

 Limitation plaintiff appears to raise only one defense or statutory limitation on liability in its motion papers filed in response to the United States' partial summary judgment motion. The owner or operator of a vessel that discharges harmful quantities of

---

3. The FWPCA requires the President of the United States to promulgate by regulation a standard for determining whether a discharge of oil is in "harmful" quantities. *Id.* § 1321(b)(4). The applicable regulation defines discharges of oil in "harmful" quantities to "include discharges of oil that: ... [c]ause a film or sheen upon or discoloration of the surface of the water or adjoining shorelines or cause a sludge or emulsion to be deposited beneath the surface of the water or upon adjoining shorelines." 40 C.F.R. § 110.3 (1991).

4. Specifically, the owner or operator of such a vessel is liable to the United States both for the actual costs incurred in removing the discharged oil and for "any costs or expenses incurred by the Federal Government or any State government in the restoration or replacement of natural resources damaged or destroyed as a result of a discharge of oil...." *Id.* § 1321(f)(1), (4).

oil into the navigable waters of the United States is liable to the United States for removal costs under the FWPCA unless the discharger successfully raises one of the enumerated exceptions to liability contained in the Act. 33 U.S.C. § 1321(f)(1). One of the liability exceptions included in the FWPCA excludes the vessel's owner or operator from liability under the Act where the "owner or operator can prove that a discharge was caused solely by . . . an act or omission of a third party without regard to whether any such act or omission was or was not negligent. . . ." *Id.* § 1321(f)(1)(D). Limitation plaintiff's motion papers indicate that it is relying on this exception to defeat the United States' motion.

The United States contends that the sole third party cause exception does not apply to the facts of the instant case. In support of this contention, the United States posits that "the plaintiff's act of operating the vessel certainly contributed to the discharge" (D.I. 104 at 11) and that the act or omission of a third party, therefore, cannot be the sole cause of this oil spill. In response, limitation plaintiff contends that "[m]erely navigating an oil-carrying vessel in a waterway does not automatically subject the vessel owner or operator to liability except in the instance of liability for civil penalties." [5] (D.I. 115 at 6).

In order for the limitation plaintiff to prevail under the Act's sole third party cause exception, it "bears a heavy burden of proving it was totally without fault for the spill." *Total Petroleum Inc.*, 12 Cl.Ct. at 181.

> [S]ection 1321 imposes absolute liability on an owner or operator for an oil spill, limited only where the spill is "caused solely by" one or more of four enumerated exceptions. It is implicit in this limitation that the conduct of the owner or operator cannot be a contributing cause of the spill. *City of Pawtucket v. United States* [546 F.2d 430], 211 Ct.Cl. 324, 326–27 (1976). Thus, correlative to any inquiry into whether a spill was caused solely by a third party is an evaluation of the owner's or operator's own conduct. Where the act or omission of an owner or operator is a

necessary antecedent to the spill, it is a contributing cause. . . .

*Reliance Insurance Co. v. United States*, 677 F.2d 844, 848, 230 Ct.Cl. 390 (1982). These authorities indicate that limitation plaintiff cannot defeat the United States' motion for partial summary judgment unless limitation plaintiff raises a genuine dispute as to whether its own conduct was a "necessary antecedent" or contributing cause to this oil spill.

The court record does not readily reveal the precise cause of the grounding of the PRESIDENTE RIVERA that ultimately led to the discharge of oil from that vessel. It appears from the record, however, that the "ship's port anchor was prematurely let go in the Delaware river" and that the ship went aground "during a maneuver directed by the river pilot in an attempt to turn the vessel back upriver after picking up the port anchor." (D.I. 103 at A18–A19).

■ Clearly, contributing causes of the June 24, 1989 oil discharge from the limitation plaintiff's tanker include the premature dropping of the PRESIDENTE RIVERA's port anchor and the subsequent grounding of the ship during a maneuver made in an attempt to bring the vessel back upriver after retrieval of the anchor. That the ship went aground allegedly "during a maneuver directed by the river pilot" as opposed to a maneuver directed by the ship's captain or another member of the PRESIDENTE RIVERA's Uruguayan Navy crew is not significant here because legal authorities properly have held that a ship's temporary local pilot does not constitute a "third party" under section 1321(f)(1). *See Burgess v. M/V Tamano*, 564 F.2d 964, 981–82 (1st Cir.1977), *cert. den'd*, 435 U.S. 941, 98 S.Ct. 1520, 55 L.Ed.2d 537 (1978); *cf. United States v. LeBeouf Bros. Towing Co.*, 621 F.2d 787, 789 (5th Cir.1980), *cert. den'd*, 452 U.S. 906, 101 S.Ct. 3031, 69 L.Ed.2d 406 (1981). Rather, a temporary local river pilot is deemed to be an agent of the ship's owner and operator since the pilot acts on the ship's behalf and "is at all times subject to the ultimate control of the ship's master". *Burgess*, 564 F.2d at 982. There-

---

**5.** It should be noted that FWPCA civil penalties are not at issue since limitation plaintiff already paid a $5,000 fine assessed by the United States under the Act.

fore, any acts or omissions of a temporary river pilot are properly attributable to the vessel's owner and operator. It thus cannot be disputed that the premature dropping of the ship's anchor and the subsequent grounding of the PRESIDENTE RIVERA are acts properly attributable to the limitation plaintiff as owner and operator of that vessel. Therefore, it also cannot be disputed that the grounding of the PRESIDENTE RIVERA and the ensuing oil spill were not caused solely by the acts or omissions of a third party.

As there are no genuine issues of material fact as to limitation plaintiff's liability under the FWPCA or as to any defenses under the Act, the United States' motion for partial summary judgment on the issue of liability will be granted.

## IV. The State of Delaware's Motion for Partial Summary Judgment

■ Claimant, the State of Delaware, moves for partial summary judgment on the issue of limitation plaintiff's liability under the Delaware Oil Pollution Liability Act[6] ("DOPLA" or "the Delaware Act"), 7 Del.C. § 6201 *et seq.* The Delaware Act prohibits discharges of oil into or upon the waters and lands of the State. *Id.*[7] DOPLA establishes a standard of strict liability for such discharges, subject only to certain enumerated statutory defenses[8].

It is undisputed that the PRESIDENTE RIVERA discharged a quantity of oil into the Delaware River. (D.I. 113 at 13 ("That there was a discharge of oil into the Delaware River on June 24th is undisputed [by limitation plaintiff]...."); D.I. 113 at 3 (Limitation plaintiff further admits that "approximately 183,184 gallons of oil were spilled."); D.I. 103 at A–1, A–2, and A–34 to A–36). Furthermore, limitation plaintiff apparently does not dispute its liability under DOPLA for clean-up costs, civil penalties and other damages[9] for which the Delaware Act imposes liability upon a discharger of oil. (See D.I. 113). Limitation plaintiff's motion papers indicate that its only dispute with the State of Delaware as to the State's claim under the Delaware Act is regarding *calculation* of civil penalties[10] imposed by the statute. (D.I. 113 at 7–14).

■ The disagreement between limitation plaintiff and the State of Delaware as to civil penalties under DOPLA concerns two issues. First, the parties are in dispute as to the legal issue of whether the Delaware Act im-

---

**6.** It should be noted that neither the Court nor the parties located any cases involving application of the Delaware Oil Pollution Liability Act.

**7.** The Delaware Act provides that "the discharge of oil which causes an incident is prohibited." *Id.* § 6203. The term "discharge" is defined as "any emission, intentional or unintentional, and shall include spilling, leaking, pumping, pouring, emptying or dumping." *Id.* § 6202(4). The term "incident" is defined as "any occurrence or series of occurrences, involving one or more vessels ... which causes or poses any threat of oil pollution in or upon the waters and lands of the State." *Id.* § 6202(7). "Oil pollution" is defined under the Act as "any discharge of oil that results in a film on, emulsion in or sludge beneath the waters of the State or its shoreline." *Id.* § 6202(9).

**8.** The Delaware Act provides an exception to liability "[t]o the extent that the incident is caused by an act of war, hostilities, civil war or insurrection, or by a natural phenomenon of an unforeseen, exceptional, inevitable and irresistible character...." *Id.* § 6208(c). Limitation plaintiff has not raised this or any other defense or exception to DOPLA liability, nor is there any evidence contained in the record indicating that this exception to liability applies to the instant case.

**9.** The Delaware Act provides the following as to damage claims for oil spills:

(a) In addition to all necessary costs of investigation and prosecution claims for damages for economic loss, arising out of or directly resulting from oil pollution, may be asserted for:
(1) Cleanup costs;
(2) Injury to, or destruction of, real or personal property;
(3) Loss of use of real or personal property;
(4) Injury to, or destruction of, natural resources;
(5) Loss of use of natural resources;
(6) Loss of profits or impairment of earning capacity due to injury to real or personal property.

*Id.* § 6207(a).

**10.** As to civil penalties imposed by the Delaware Act, it is provided that "[a]ny person who violates a provision of this chapter or any rule or regulation promulgated thereunder shall be liable in any court of competent jurisdiction for a civil penalty of not less than $1,000 nor more than $10,000 for each day of violation." *Id.* § 6205(a).

poses liability for civil penalties according to the number of days that the vessel discharged oil, as limitation plaintiff contends, or according to the number of days that oil remained in the water, as the State of Delaware contends. The parties are also in dispute, although the State of Delaware properly notes that these issues go to the question of damages and that the Court should not address damages at this stage of the proceedings, as to the factual issues of how many days oil remained in Delaware water and how many days the PRESIDENTE RIVERA discharged oil into the water.

Thus, there is no dispute as to whether limitation plaintiff is liable under the Delaware Act for civil penalties. The dispute presented by the parties concerns instead the legal standard for calculating civil penalties and the proper number of penalty days depending on the Court's interpretation of the Delaware Act's civil penalty provision. At this stage of the proceedings, it is unnecessary to resolve these matters. The State of Delaware's motion is for partial summary judgment on the issue of liability. The Court already has found that limitation plaintiff is liable for civil penalties and other damages under the Delaware Act, and limitation plaintiff has not disputed this proposition in its motion papers. The matters disputed by the parties regarding calculation of civil penalties will be resolved during the damages stage of this proceeding.

As there are no genuine issues of material fact regarding limitation plaintiff's liability to the State of Delaware under the Delaware Act, claimant's motion for partial summary judgment on the issue of liability should be granted [11].

## V. Conclusion

The Court finds that there are no genuine issues of material fact as to whether the PRESIDENTE RIVERA discharged harmful quantities of oil into the Delaware River in violation of the Federal Water Pollution Control Act. The Court further finds, as a matter of law, that the acts and omissions of the limitation plaintiff causally contributed to this oil spill, and that no act or omission of a third party, therefore, was the sole cause thereof. Claimant, the United States, thereby is entitled to entry in its favor of a partial summary judgment on the issue of limitation plaintiff's liability to the United States for removal and restoration costs under the FWPCA. The amount of limitation plaintiff's liability under the FWPCA will be determined in subsequent proceedings in this action.

The Court also finds that there are no genuine issues of material fact as to whether limitation plaintiff is liable to the State of Delaware under the Delaware Oil Pollution Liability Act for civil penalties, cleanup costs and other statutory damages, all of which must be proven during the damages stage of this proceeding. Claimant, the State of Delaware, thereby is entitled to entry in its favor of a partial summary judgment on the issue of liability.

An Order consistent with this Memorandum Opinion shall issue.

---

11. The State of Delaware claims in its reply brief that "[t]he State has additionally alleged that the Presidente Rivera violated the Delaware Environmental Control Act...." (D.I. 118 at 6) This allegation was not included in the State's Claim filed in this limitation action, nor was it included in the State's Notice of Motion nor its opening brief filed in support of its partial summary judgment motion. As the State of Delaware has not properly brought a claim before this Court pursuant to the Delaware Environmental Control Act, there is no occasion to address the merits of said claim.