# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DELAWARE DEPARTMENT OF NATURAL RESOURCES AND ENVIRONMENTAL CONTROL, | ) ) ) | C.A. No. N24C-01-164 FJJ |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GRANTHAM LANE PROPERTIES, LLC, | ) ) | TRIAL BY JURY OF TWELVE DEMANDED |
| | ) | |
| Defendant. | ) | |

*Submitted:* February 18, 2025
*Decided:* March 4, 2025

## <u>OPINION AND ORDER</u>

*Upon Consideration of Parties' Cross-Motions for Summary Judgment*
**DENIED**

Devera Scott, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware, *Attorney for Plaintiff*

Gregory D. Stewart, Esq., Law Office of Gregory D. Stewart, P.A., Middletown, Delaware, *Attorney for Defendant*

**Jones, J.**

1

## INTRODUCTION

The instant Cross-Motions for Summary Judgment stem from an alleged release of a hazardous substance (hereinafter "the Release") at 729 Grantham Lane, New Castle, DE 19720, property owned by Grantham Lane Properties, LLC ("Defendant").[1]  Defendant filed their Motion for Summary Judgment on January 15, 2025 maintaining that summary judgment is appropriate on the ground that the Release was caused by a third party and not the Defendant.[2]  Plaintiff filed its Motion for Summary Judgment on January 28, 2025 asserting that Defendant is strictly liable under Delaware's Hazardous Substance Cleanups Act ("HSCA").[3]  Responses have been filed, and oral argument was heard on February 18, 2025.

## FACTS AND PROCEDURAL HISTORY

An anonymous informant called the Environmental Crimes Unit ("ECU") on February 16, 2021, to report a 300-gallon spill of diesel fuel.[4]  The Delaware Department of Natural Resources and Environmental Control ("DNREC") Emergency Response team arrived at the scene but was unable to determine the source of the release.[5]  Due to the extent of the release, the DNREC Emergency Response team had to seek help from Lewis Environmental to assist in the remediation work.[6]  DNREC sustained $64,031.85 in costs from remediating the

---

[1] Docket Item ("D.I.") 15.
[2] *Id.*
[3] D.I. 18.
[4] D.I. 1 ¶9.
[5] *Id.* ¶10.
[6] *Id.* ¶13.

2

Release.[7]  On January 10, 2024, Plaintiff, DNREC, brought claims to recover costs, as well as fees and expenses,[8] alleging Defendant, as the property owner, was strictly liable, jointly and severally, for the Release.[9]  Defendant filed a Motion to Dismiss on March 11, 2024.[10]  The Court denied the Motion to Dismiss because Defendant failed to prove "acts or omissions of a third party" as the Court reasoned was required by the third party defense to liability under HSCA.[11]  With a more complete record, Defendant expands upon its third-party defense argument in its Motion for Summary Judgment.

## PARTY CONTENTIONS

Defendant asserts it is not liable for costs from the Release on the sole basis that Defendant is the property owner.[12]  Defendant suggests that because there is no evidence to support Defendant caused the Release, then a third party's acts or omissions must be liable.[13]  Defendant points to several potential third parties including: Samuel Coraluzzo, Defendant's tenant and owner of several tank trunks on Defendant's property, Tharron Terrell Shehee, another tenant who was charged with causing a similar spill at Grantham Lane in April 2021, Barry Ranck, a "disgruntled tenant,"[14] or the anonymous Informant who gave DNREC the tip on the

---

[7] *Id.* ¶19.
[8] *Id.* ¶20-40.
[9] *Id.* ¶ 32.
[10] D.I. 4.
[11] D.I. 9 ¶9.
[12] D.I. 15.
[13] *Id.*
[14] D.I. 18, Exhibit ("Ex.") A.

Release.[15]   Defendant contends HSCA requires the Defendant to assert "a" responsible third party caused the Release and not establish the specific party at fault.[16]   Defendant further argues Plaintiff's investigation of the Release was "severely deficient" and that Plaintiffs refuse to relay any information about the anonymous informant despite the requirement under Delaware Rule of Evidence 509(c)(2).[17]

Plaintiff rejects Defendant's logic that since there is no evidence that Defendant is liable for the Release then a third party must be responsible for costs under the statute.[18]   Plaintiff argues that Defendant fails to acknowledge the burden of proof necessary to establish the third-party defense.[19]   Plaintiff contends Defendant pointed to potentially responsible third parties but failed to establish evidentiary support that those third parties were "solely responsible" for the Release.[20]   Further, Plaintiff asserts because Defendant cannot indicate who the responsible third party is, there is no way of knowing if the third-party defense can apply to them.[21]

## STANDARD OF REVIEW

Superior Court Civil Rule 56(c) states a party seeking summary judgment

---

[15] *Id.*
[16] *Id.*
[17] *Id. See* DRE 509(c) ("If it appears . . .that an informer may be able to give testimony . . . in a civil case which would be relevant to a fair determination of a material issue on the merits of a case in which a public entity is a party, and the informed public entity invokes the privilege, the court shall give the public entity an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony.")
[18] D.I. 17 and 18.
[19] *Id.*
[20] *Id.*
[21] *Id.*

must show "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[22] The court views the evidence provided "in the light most favorable to the non-moving party."[23] The initial burden is on the moving party to show there are no genuine issues of material fact.[24] The burden then shifts to the non-moving party to show there is at least one material issue of fact in dispute.[25] The non-moving party must furnish "evidence of a material fact in dispute that are [sic] sufficient to withstand a motion for judgment as a matter of law and to support the verdict of a reasonable jury."[26] The court must "accept all undisputed factual assertions and accept the nonmoving party's version of any disputed facts."[27] However, any factual inferences made in favor of the non-moving party must be reasonable.[28]

The summary judgment standard remains the same when parties file cross-motions.[29] "[T]he existence of cross-motions for summary judgment does not act as *per se* concession that there is an absence of factual issues," however, the Court may use the cross-motions as stipulation for decision on the record when the parties do not disagree as to a relevant factual dispute.[30]

---

[22] Del. Super. Ct. Civ. R. 56(c).
[23] *Garvin v. Booth*, 2022 WL 247696, at *7 (Del. Super. Jan. 27, 2022).
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Coker v. Tenney-Andrews*, 2016 WL 6659500, at *2 (Del. Super. Nov. 10, 2016).
[28] *Smith v. Haldeman*, 2012 WL 3611895, at *1 (Del. Super. Aug. 21, 2012).
[29] *Garvin*, 2022 WL 247696, at *7.
[30] *Id*. (quoting *Total Care Physicians, P.A. v. O'Hara,* 798 A.2d 1043, 1050 (Del. Super. Ct. 2001)).

**ANALYSIS**

I.    <u>DNREC Failed to Provide Sufficient Proof of a Release, Therefore a Genuine Issue of Material Fact Remains as to Whether a Release Occurred on Defendant's Property.</u>

"Delaware modelled HSCA after the Federal Comprehensive Environmental Response Compensation and Liability Act ("CERCLA").[31] HSCA and CERLCA requires a plaintiff to prove liability by establishing four elements: (1) the defendant falls under one of the responsible party categories under 7 Del. C. § 9607(a); (2) the release of hazardous substances occurred at a "facility;"[32] (3) a release or threatened release of hazardous substances occurs from the facility and into the environment; and (4) the government incurred clean-up costs from the release.[33]

HSCA holds several responsible parties strictly liable for the release of a hazardous substance.[34] Among those groups are owners and operators of a facility.[35] HSCA broadly defines "facility" as "any building, structure . . . or any site or area where a hazardous substance[36] has been generated, manufactured, refined, transported, stored, treated, handled, recycled, released, disposed of, placed or otherwise come to be located."[37] Defendant owns and rents out the site of the alleged

---

[31] *Garvin*, 2022 WL 247696, at *9 (citing 42 U.S.C. §§ 9601-9675).
[32] *See* § 9601(9). CERCLA's "facility" definition is nearly identical to HSCA's.
[33] *United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 258-59 (3d. Cir. 1992).
[34] 7 *Del. C.* §9105(a)(1)-(6).
[35] *Id.* §9105(a)(1).
[36] *See Id.* §9103(15) (defining "hazardous substance" as "[a]ny substance determined by the Secretary through regulation to present a risk to public health or welfare or the environment if released into the environment"); 7 DE Admin. Code 1375-2.0 Regulations Governing Hazardous Substance Cleanup, Definitions and Usage (adding "petroleum, including crude oil or any fraction thereof;" to the definition of "hazardous substance.")
[37] *Id.* §9103(10).

Release.[38]  Defendant characterizes the site as an "industrial complex," which falls under the statute's definition of "facility."[39]

DNREC has shown that Defendant is the owner of a facility for liability purposes. However,  DNREC has failed to make the required showing that a release of hazardous substances occurred.  Defendant has not admitted to the release.[40] Defendant is correct that no proper evidence has been offered in support of DNREC's Motion that a release occurred.   Given this absence of evidence, DNREC's Motion for Summary Judgment is **DENIED.**[41]

## II.   There Is a Genuine Issue of Material Fact Concerning the Identity of a Third Party Who Caused the Alleged Release.

A party found liable under HSCA §9105(a) is held "strictly liable, jointly and severally, for all costs associated with a release from a facility and for all natural resource damages resulting from the release."[42],[43]

---

[38] D.I. 15.

[39] *Id.*

[40] *See* D.I. 10.

[41] At oral argument, the Court allowed Plaintiff to supplement the record and file an updated motion. Defendant was given time to respond to any supplement. This process is now underway.

[42] 7 *Del. C.* § 9105(b). *See also Id.* §9103(25) (defining a "release" as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping or disposing into the environment.")

[43] There is a lack of Delaware case law interpreting and applying HSCA.  HSCA was drafted based on the Federal CERCLA statute.  *See Garvin*, 2022 WL 247696, at *7; *Protecting Our Indian River v. Del. Dep't. of Nat. Res. and Envtl. Control*, 2015 WL 5461204, at *7 (Del. Super. Aug. 14, 2015).  When asked to interpret HSCA, this Court has looked to case law expounding on CERCLA for guidance.

The plain language holds the owner of a facility liable despite nonparticipation in activities or omissions causing or leading to the release of a hazardous substance.[44] This interpretation is well-established in federal case law.[45]

At the time of the Release, Defendant was the owner of the facility at which the alleged Release occurred. Therefore, under HSCA, Defendant is strictly liable. Courts recognized the apparent unfairness of imposing strict liability and burden shifting on a landowner who took no part in releasing a hazardous substance into the environment, yet still applied CERCLA's strict liability provision and shifted the burden of causation to landowners.[46]

   a. After DNREC Proves Strict Liability, The Causation Burden Shift to Defendant to Establish the Third Party Affirmative Defense.

Section 9105(c)(1) of HSCA provides a defense to an owner of a facility on which a hazardous substance has been released to be excused from liability as long as the owner meets it burden of proving the requirements under the exception. The statute provides:

---

[44] *See New York v. Shore Realty Corp.*, 759 F.2d 1032, 1044 (2d Cir. 1985) ("We agree . . . that [CERCLA] section 9607(a)(1) unequivocally imposes strict liability on the current owner of a facility from which there is a release or threat of release, without regard to causation."); *U.S. v. Monsanto Co.*, 858 F.2d 160, 168 (4th Cir. 1988) ("The plain language of [CERCLA] section 107(a)(2) extends liability to owners of waste facilities regardless of their degree of participation in the subsequent disposal of hazardous waste.") CERCLA sections 9607(a)(1) and (2) are the counterparts to HSCA sections 9105(a)(1) and (2).

[45] *See Burlington Northern and Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 609 (2009) (holding a potentially responsible party ("PRP"), statutorily defined and including the owner of a facility, "may be compelled to . . . reimburse the Government for its past and future response costs); *Lincoln Props, Ltd. v. Higgins*, 823 F.Supp. 1528, 1532 (E.D. Cal. 1992) ("[Plaintiff] concedes that because it is the owner of [the facility] it is liable in the first instance for the costs of cleanup under CERCLA."); *Monsanto Co.*, 858 F.2d at 167 ("We agree with the overwhelming body of precedent that has interpreted [CERCLA] section 107(a) as establishing a strict liability scheme."); *Shore Realty Corp.*, 759 F.2d at 1042.

[46] *See United States v. A.& N Cleaners and Launderers, Inc.* 854 F.Supp. 229, 240-42 (S.D.N.Y. 1994) ("[S]ince . . . Defendants' liability is predicated on their unwitting ownership of contaminated property, rather than on any disposal of waste which might have occurred on the Property since they purchased it, they bear the burden of showing that a totally unrelated third party is the sole cause of the release of hazardous substances in question.")

(1) Any person who can establish that the release or imminent threat of release for which the person would be otherwise liable was caused solely by:

   c. An act or omission of a third party other than:

      1. An employee or agent of the person asserting the defense; or

      2. Any person whose act or omission occurs in connection with a contractual relationship existing, directly or indirectly with the person asserting this defense to liability. This defense applies only when the person asserting the defense has exercised due care with respect to the hazardous substances, the foreseeable acts or omissions of the third party, and the foreseeable consequences of those acts or omissions.[47]

The burden of proving the requirements of the exception lies with the Defendant. The Defendant must prove: (1) that the release was caused solely by an act or omission of a third party, (2) that the release was not caused by an employee or agent of the defendant, (3) that there was no contractual relationship between it and the party causing the discharge, and finally, (4) that Defendant exercised due care with respect to the hazardous substance, foreseeable acts or omissions of the third party, and the foreseeable consequence of those acts or omissions.[48] Because the statute sets a strict liability standard, the third party defense is meant to be narrowly construed.[49] The language "caused solely by" requires a showing of proximate cause.[50]

---

[47] 7 *Del. C.* § 9105(c)(1).

[48] *Id.*

[49] *Adobe Lumber, Inc. v. Hellman*, 685 F.Supp.2d 1188, 1204 (E.D. Cal. 2009) ("Because CERCLA is a strict liability statute with few defenses, § 9607(b)(3) . . . is narrowly construed.") (quoting *United States v. Honeywell Int'l, Inc.*, 542 F.Supp.2d 1188, 1199 (E.D. Cal. 2008)).

[50] *Lincoln Props., Ltd.*, 823 F.Supp. at 1542-43.

Defendant provided affidavits to establish it did not cause a release. The affidavits are signed by Bonnie Currinder, Cliff Currinder, and James Ash, Defendant's three employees. Each affidavit states:

> I was not involved in any way in the Release alleged in the Complaint reference above. I am not aware of any employee, contractor or vendor of Grantham Lane which was involved in the matter. It is my belief that the alleged Release, to the extent there was one, would have been caused by a third party unrelated in any way to Grantham Lane Properties.[51]

While the affidavits attest to Defendant's lack of responsibility for a release, Defendant, as the landowner, must still prove the other requirements of the exception. Under this burden, Defendant must identify a responsible third party. Defendant cannot prove a contractual relationship between Defendant and the third party does not bar Defendant's use of the affirmative defense without first identifying the third party.[52] Additionally, Defendant must show it has exercised due care with respect to hazardous substances and foreseeable acts and omissions of third parties.[53] Defendant fails to prove either at this summary judgment stage of the proceedings.

Case law does not support Defendant's contention that "a specific third party" does not need to be identified to raise the third party defense. In *New York v. Adamowicz*, the Second Circuit held the landowner, deemed a responsible party under CERCLA, in raising the third party defense, failed to establish "a genuine

---

[51] D.I. 15 Ex. A.
[52] 7 *Del. C.* §9105(c)(1)c.
[53] *Id.*

10

factual dispute as it relates to their affirmative defense."[54]  The Court stated that "vague assertions about the possibility that unidentified contractors caused the contamination does not create a triable issue."[55]  Similar to the landowner in *Adamowicz* pushing blame onto "unidentified contractors," Defendant is making unsubstantiated claims that numerous third parties are to blame for the Release in this case.  Defendant fails to articulate sufficient facts pertaining to an act or omission of a third party such that the issue of causation could be sent to a jury.  It is not sufficient for Defendant to assert "a" third party caused the Release because Defendant did not have the means or motive to.  The burden is on the Defendant to establish the third party's act or omission which caused the release.[56]

Defendant has not established the required proof to assert the third party defense and release the Defendant from strict liability.  Instead, Defendant has put forward four prospects without evidentiary support of these accusations.  Defendant first suggests Samuel Coraluzzo, Defendant's tenant and owner of several tank trunks on Defendant's property.  Defendant supports this identification with the proximity of Coraluzzo's trucks to the spill and the fact that Coraluzzo "had the means and opportunity readily available" to cause the Release.[57]  Then, Defendant raises Tharron Terrell Shehee.  Shehee was arrested in February 2021 and April 2021

---

[54] 609 Fed.A'ppx 19, 21 (2d Cir. 2015).
[55] *Id.*
[56] *A & N Cleaners and Launderers, Inc.*, 854 F.Supp. at 239.
[57] D.I. 15.

11

for separate releases of a pollutant.[58]  The February 2021 release occurred at a BP Gas Station a day after the Release at issue.  Defendant asserts that because the spill in February 2021 occurred one day after the Release at Grantham Lane, Shehee is likely responsible for both releases.[59]  In response to an interrogatory, Defendant stated a "disgruntled tenant," Barry Ranck, could be responsible.[60]  Finally, Defendant submits the anonymous Informant may be the responsible third party because the informant witnessed the Release and made the call to DNREC. Defendant fails to provide sufficient proof that any of these third parties "solely caused" the Release.

Defendant contends that the language of the statute does not require it to identify a specific third party who is responsible for the release. But the third-party affirmative defense also requires proof that: (1) the release of the hazardous substance was caused solely by the acts or omissions of a third party *other than* a party in a contractual relationship with the defendant, and (2) the defendant exercised due care to prevent consequences of foreseeable actions.[61]  A contractual relationship between the party raising the defense and the third party bars the use of the defense.[62]  As the burden is on Defendant to prove the exception, the Defendant

---

[58] *Id.* Ex. B.
[59] D.I. 15.
[60] D.I. 17 Ex. B.
[61] *Monsanto*, 858 F.2d at 168-69; 7 *Del. C.* § 9105(c)(1)c.; 42 U.S.C. §9607(b)(3).
[62] *See* 7 *Del. C.* § 9105(c)(1)c.2.

must prove a lack of contractual relationship. There is simply no way to meet this burden without identifying the responsible party.

Defendant maintains that the "mere existence of a contractual relationship" is not sufficient to bar the defense.[63] According to the Defendant, Federal case law, in particular *Westwood Pharmaceuticals, Inc. v. National Fuel Gas Distribution Corp.*, supports a conclusion that the statutory language "in connection with" requires a relationship between the contract and the act or omission causing the release.[64] The contract must "either relate to the hazardous substances or allow the landowner to exert some element of control over the third party's activities."[65]

The Ninth Circuit critiques *Westwood* and the Second Circuit's interpretation of "in connection with" as too narrow, specifically in the current/prior landowner context.[66] In *California Department of Toxic Substances Control v. Westside Delivery, LLC*, the Ninth Circuit held a contractual relationship existed between the current landowner and the prior landowner when the property was sold at a tax auction because "the previous owner caused contamination 'in connection with' its contractual relationship with [the current landowner.]"[67] In current/prior landowner scenarios, the Court determined the "in connection with" language is meant to

---

[63] *Westwood Pharm, Inc. v. Nat'l Fuel Gas Dist. Corp.*, 964 F.2d 85, 89 (2d. Cir. 1992); *Shapiro v. Alexanderson*, 745 F.Supp. 268 (S.D.N.Y. 1990).
[64] *Id.*
[65] *Id.* at 91-92.
[66] *Id.* at 1100.
[67] 888 F.3d 1088 (9th Cir. 2018).

protect prior landowners from liability "situations in which the previous owner's polluting acts or omissions were unrelated to its status as a landowner."[68]

Other Circuits have allowed a lease agreement to bar the third party defense, but the agreement put the landowner on notice that the lessee delt with hazardous substances. For example, in *United States v. Monsanto*, the Fourth Circuit held the site-owner's lease agreement with the lessees, chemical and waste management companies, was a contractual relationship barring the third party defense.[69] Similarly, in *United States v. Northernaire Plating Co.*, a contractual relationship barred the third party defense because the landowner was aware the lessee's facilities utilized hazardous substances.[70]

Evident from the above discussion, there is not a decisive interpretation of "in connection with" amongst the Circuits. However, a contractual relationship allowing the defense-asserting party to foresee potential acts or consequences of a hazardous substance release is a commonality among the separate understandings.[71]

Defendant uses interpretations of the Clean Water Act[72] to argue Defendant was not in a contractual relationship with a third party putting Defendant in such a

---

[68] *Id.* at 1101.
[69] 858 F.2d 160 (4th Cir. 1988).
[70] *United States v. Northernaire Plating Co.*, 670 F.Supp. 742 (W.D. Mich. 1987); *See also Cal. Dep't of Toxic Substance Control v. Westside Delivery*, 888 F.3d 1095 (9th Cir. 2018).
[71] *See, e.g., Morrison Enterprises v. McShares, Inc*, 302 F.3d 1127, 1134 (10th Cir. 2002)(holding a hazardous substance spilling onto property while the releasing party was unloading a fumigant delivery for the property owner was "the act or omission of a third party in connection with a contractual relationship" barring the property owner from the defense.); *Redwing Carriers, Inc v. Saraland Apartments*, 94 F.3d 1489, 1508 (11th Cir. 1996)(holding general partners escape liability through the third party defense because their partnership interest did not put them in a contractual relationship with the release-causing parties.)
[72] *See Violet v. Picillo*, 613 F.Supp. 1563, 1570 n.7 (D.R.I. 1985) (using CERCLA's definition of liability, §9601(32), "the standard of liability which obtains under section 311 of the [Clean Water Act]," to demonstrate how Congress used the Clean Water Act as guidance in drafting CERCLA.)

14

position as to "exert control" over a hazardous substance release.[73] While case law interpreting what constitutes a contractual relationship under the relevant provisions of the Clean Water Act is informative for applying HSCA, even under the Clean Water Act, the party asserting the third party defense still needs to establish the third party with sufficient proof before the Court can even consider the applicability of a contractual relationship bar.[74]

Defendant has provided sufficient proof that Defendant did not cause a release. However, Defendant has not met its causation burden in establishing an identifiable third party that caused a release. Defendant cannot use the third party defense to point to any available third party without establishing that Defendant has no contractual relationship with the entity that solely caused the release.[75]

The Court, as other courts have done, expresses its frustration with this result. It seems unfair to this landowner who had no role in this release. However, it is the job of this Court to interpret the will of the General Assembly, and in this area, the General Assembly has expressed a desire for strict liability on a landowner in the Defendant's position. The landowner can only absolve itself if it can meet the heavy burden of proving the requirements to the exception to strict liability. In the instant

---

[73] D.I. 19.

[74] *See United States v. LeBeouf Bros. Towing Co.*, 621 F.2d 787 (5th Cir. 1980)(The defendant sufficiently raised an identifiable party with sufficient evidence before the Court evaluated whether a contractual relationship barred the third party's liability under the statute.)

[75] In fact, one of the potential entities Defendant points to as being responsible is Samuel Coraluzzo. The evidence suggests Coraluzzo parked or stored tank trucks on the property at the location of the Release. *See* D.I. 15. This landlord/tenant relationship between Coraluzzo and Defendant, along with Defendant's knowledge that these trucks were parked on the property, is the classic situation contemplated by case law that would make Defendant liable for any spills of hazardous materials from the Coraluzzo trucks.

15

case, the Defendant has not met that burden at this point.  Therefore, Defendant's Motion for Summary Judgment on the basis of the third party defense is **DENIED.**

**IT IS SO ORDERED.**


                                       */s/ Francis J. Jones, Jr.*
                                         Francis J. Jones, Jr., Judge


cc:     File&ServeXpress